[No. F004400. Fifth Dist. Jan. 23, 1986.]

FRANKLIN HOLLISTER CALDWELL, Plaintiff and Appellant, v. A.R.B., INC., Defendant and Respondent.

**COUNSEL**

Cartwright, Sucherman & Slobodin, Lee S. Harris, Daniel U. Smith and Eric G. Scheie for Plaintiff and Appellant.

Eyherabide, Pearl, Beckman & Eyherabide, Arthur I. Pearl, Arthur E. Schwimmer and Marc J. Poster for Defendant and Respondent.

**OPINION**

**BEST, J.**—Plaintiff appeals from a summary judgment entered in favor of defendant, A.R.B., Inc. (A.R.B.) We must determine whether exceptions to the "going-and-coming" rule require reversal.

## THE CASE

Plaintiff filed a complaint for damages against Bruce Wayne Brandon, charging him with negligently operating his vehicle and causing it to collide with plaintiff's vehicle. The complaint further alleged that Brandon was acting in the scope of his employment. At the time of the accident, Brandon was employed by defendant A.R.B., and A.R.B. was named later as a defendant in the suit. A.R.B. filed a motion for summary judgment on the ground that Brandon was not acting within the scope of his employment at the time of the accident. The motion was granted, and plaintiff appeals.

## THE FACTS

On January 20, 1982, plaintiff was driving his van on Highway 58 in Kern County when he was involved in a car accident. Plaintiff's van and a vehicle driven by Brandon collided head-on. Brandon was killed, and plaintiff suffered severe injuries as a result of the accident.

Brandon was an apprentice pipefitter and had been hired by A.R.B. to work at the Shell Oil dehydration plant project, which was located north of McKittrick approximately 35 to 40 miles from Bakersfield. As a pipefitter, Brandon was a member of the United Association Local Union No. 460 and was subject to the terms and conditions of the working agreement between Union Local No. 460 and the Plumbing and Mechanical Contractors Association of Kern, Inyo and Mono Counties. Defendant A.R.B. was a member of the Plumbing and Mechanical Contractors Association and, as such, also was subject to the union contract.

January 20, 1982, was a regular workday for the apprentice pipefitters working at the McKittrick jobsite, and Brandon had reported for work that day. The workday, however, ended early at approximately 11 a.m. due to the onset of heavy rain. The rain caused working conditions around the pipe to be unsafe, plus the welders were unable to work in the rain. Under these

conditions, the workers were sent home and were not subject to recall on that day. The employees were to assume the next day was a regular workday unless they were notified the following morning not to show up. The employees then received pay for working from 7 a.m. to 11 a.m.

Sometime that morning, Brandon offered to give a coworker, Jeff Richardson, a ride home. Richardson normally commuted to work with another employee, David Solar, but Solar had fallen into a mud puddle, and the company sent Solar home so that he would not get sick. Afterwards, the job was shut down early, and Richardson and Brandon left the jobsite around noon. On their way back to Bakersfield from work, their vehicle was involved in the car accident that killed Brandon and injured plaintiff.

Richardson and Ernest Choukalos, construction foreman for A.R.B., both gave information in their depositions about the conditions of employment with A.R.B. The employees were to report directly to the jobsite each day, which was about 35 to 40 miles from Bakersfield. There was no public transportation from Bakersfield to McKittrick. Richardson usually carpooled with a coworker. All the carpooling was informally organized by the individual employees. Choukalos also stated no public transportation existed from the union hall to the jobsite. The employees had to use their own vehicles to get out to the jobsite, or they simply would not work.

Choukalos and Richardson testified that the employees did not need a vehicle to carry out their work on the job. All the work was completed at the plantsite. If the apprentice pipe fitters needed to work in a certain area of the plant project, they would walk to that area. The employees were not permitted to bring their personal vehicles onto the plant premises. An exception was that the welders used their own welding trucks while working on the plant property, and the employees occasionally rode from area to area with the welders. Furthermore, the employees never engaged in any delivery or transportation chores for A.R.B. between the jobsite and Bakersfield. Finally, regarding the transportation of tools and equipment necessary for the job, Richardson stated that the apprentice pipefitters were required to bring a hardhat, leather gloves and steel-toed boots to the job each day. All other tools and equipment were provided by A.R.B. On this matter, the union contract provides in part that no tools are to be furnished by any of the workmen. Also, it provides that employees working in an area where they are exposed to hazardous conditions shall be provided protective clothing and equipment by the employer. Finally, the union contract also states that no employee covered by the agreement shall furnish a vehicle for any purpose other than his commute to and from work.

The depositions of Richardson and Choukalos establish that the employees were not paid for their travel time. That is, the employee's hourly wages

began when he reported for work at 7 a.m. and ended at the close of the day at approximately 4 or 4:30 p.m. In addition to the hourly wages, however, the employees were paid a travel allowance for the use of their cars. All the employees were paid the allowance whether or not they actually drove their own car. For this job, Richardson stated he believed the allowance was $10 per day.

As part of its moving papers, defendant submitted the union contract. The following provisions of the contract are pertinent to the question of whether Brandon was within the scope of his employment at the time of the accident. Subsection 19 of section 9 of the union contract provides that an employee who reports for work at the regular starting time, but is not provided with work, shall receive wage payments for four hours unless the employee was told not to report. If the employee reports for work and some work is available, he shall be paid at least four hours of wages, and if he works for any amount of time over four hours the employee shall be paid at least one full day's pay. Also, the employee who reports for work in a subsistence or travel time area shall receive at least one day's subsistence or travel time pay whether or not work is provided. The contract lists two exceptions to these provisions: One is when strike conditions preclude putting an employee to work or a work stoppage is in effect, and the other is when the employee leaves work by his own decision.

Subsection 20 of section 9 of the agreement provides that when an employee reports for work in a subsistence or travel time area and receives no work due to weather conditions, the employee will receive subsistence or travel time pay for reporting unless he was notified not to report. If work has started and then is stopped because of weather conditions, the employee shall be paid for the actual time worked or for two hours, whichever is greater. Finally, when the employer shuts down a job to avoid possible loss of human life because of an emergency situation endangering the safety of employees, the employee is compensated only for the actual time worked.

Section 21 of the union contract sets forth the hourly wages for the various classes of employees covered by the contract and sets forth the formula for paying employees a travel allowance. The amount of the travel allowance paid to each employee would vary depending on the distance between the local union office and the jobsite to which the employee was dispatched. A 15-mile free zone was established around the local union office. If the jobsite was located more than 15 miles from the office the employee would get paid a travel allowance. For example, if the jobsite was between 15 and 20 miles from the union office, the employee would receive $5.50 per workday travel allowance. The greater the distance between the office and jobsite, the greater the travel allowance.

On the basis of these facts, defendant A.R.B. brought a motion for summary judgment. Relying on *Harris* v. *Oro-Dam Constructors* (1969) 269 Cal.App.2d 911 [75 Cal.Rptr. 544], defendant argued that Brandon was not in the scope of his employment at the time of the accident because of the going-and-coming rule, and that no exception to the going-and-coming rule was demonstrated by the facts of the case. Plaintiff opposed the motion on the ground that a triable issue of fact existed over whether Brandon was on a special errand for his employer at the time of the accident and on the ground that the payment of a travel allowance by the employer placed Brandon in the scope of his employment at the time of the accident. The trial court granted the motion on the basis of *Harris*, and plaintiff has appealed that ruling.

## DISCUSSION

■ The rules governing the summary judgment procedure have been stated succinctly on numerous occasions as follows: "We have summarized the well-established rules governing summary judgment procedure as follows: ' "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts." ' " (*Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 808 [117 Cal.Rptr. 423, 528 P.2d 31].)

■ When the defendant is the moving party, his task is to negate completely an essential element of plaintiff's case or to establish a complete defense. (*Saatzer* v. *Smith* (1981) 122 Cal.App.3d 512, 517 [176 Cal.Rptr. 68].) This task is limited to addressing those issues or theories of liability raised in plaintiff's complaint. The sole theory of liability claimed against A.R.B. in this case was that of vicarious liability for the negligence of its employee Brandon. It was incumbent upon defendant, then, to show as a

matter of law that Brandon was not in the scope of his employment at the time of the accident.

■ Under the doctrine of respondeat superior, an employer is liable for the torts of his employees committed within the scope of their employment. (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755].)

■ Generally, whether an act of an employee is committed within the scope of employment is a question of fact. (*Ducey* v. *Argo Sales Co., supra,* 25 Cal.3d at p. 722.) However, when the facts of a case are undisputed and conflicting inferences may not be drawn from those facts, whether an employee is acting within the scope of his employment is a question of law. (*Golden West Broadcasters, Inc.* v. *Superior Court* (1981) 114 Cal.App.3d 947, 956 [171 Cal.Rptr. 95].)

■ Case law has established the general rule that an employee is outside the scope of his employment while engaged in his ordinary commute to and from his place of work. (*Ducey* v. *Argo Sales Co., supra,* 25 Cal.3d at p. 722.) This principle is known as the "going-and-coming rule" and is based on several theories. One is that the employment relationship is suspended from the time the employee leaves his job until he returns. Another is that during the commute, the employee is not rendering services to his employer. (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 961 [88 Cal.Rptr. 188, 471 P.2d 988].) The courts, however, have recognized several exceptions to the "going-and-coming" rule. (*Id.,* at pp. 961-962.) One exception is the special mission or errand exception and another is a travel expense or allowance exception.

Plaintiff relies on workmen's compensation cases as well as tort cases in support of his contention that the special mission or errand exception and the travel expense exception are applicable in this case. ■ Although the California courts often cite tort and workmen's compensation cases interchangeably, the latter are not controlling with respect to exceptions to the "going-and-coming" rule when liability is predicated upon respondeat superior principles. (1 Witkin, Summary of Cal. Law (1984 supp.) Agency and Employment, § 167, pp. 266-267; see *Ducey* v. *Argo Sales Co., supra,* 25 Cal.3d 707, 722; *Munyon* v. *Ole's, Inc.* (1982) 136 Cal.App.3d 697, 703 [186 Cal.Rptr. 424]; *Church* v. *Arko* (1977) 75 Cal.App.3d 291, 300 [142 Cal.Rptr. 92].)

■ We first reject a contention raised by plaintiff at oral argument. Citing to *Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345 [220 Cal.Rptr. 94, 708 P.2d 673], plaintiff argued the em-

ployee's commute fell into the special risk exception to the going-and-coming rule. The argument was that in sending the employees home early in hazardous weather, the employer subjected the employees to a risk causally related to employment.

In the *Santa Rosa* case, the Supreme Court set forth the following test to determine the applicability of the special risk exception in workmen's compensation cases: "[T]he exception will apply (1) if 'but for' the employment the employee would not have been at the location where the injury occurred and (2) if 'the risk is distinctive in nature or quantitatively greater than risks common to the public.' " (*Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd., supra,* 40 Cal.3d at p. 354.)

Assuming, without deciding, that the special risk exception is applicable to employer tort liability cases, the facts of the present case fail to satisfy the second prong of the test. Plaintiff is correct that these employees were subjected to the risk of driving home in hazardous weather, but all drivers in the vicinity were exposed to the same risks in driving their automobiles under the prevailing weather conditions. We conclude that the risk suffered by A.R.B. employees was not " '. . . distinctive in nature or quantitatively greater than risks common to the public.' "

A. *Special Errand Exception*

Another exception to the going-and-coming rule both in tort and workmen's compensation cases occurs when the employee commits a negligent act while engaged in a "special errand" or "special mission" for the employer. (*Munyon* v. *Ole's, Inc., supra,* 136 Cal.App.3d 697, 703.) In describing the special errand exception, the Court of Appeal in *Boynton* v. *McKales* stated: "If the employee is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer, the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons. [Citations.] To such special missions the general test as to scope of employment applies. It is not necessary that the servant is directly engaged in the duties which he was employed to perform, but included are also missions which incidentally or indirectly contribute to the service, incidentally or indirectly benefit the employer." (*Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 789 [294 P.2d 733].) The following activities have been considered special errands: picking up or returning tools used on the job, attendance at an employment social function when an employee's attendance is expected and it benefits

the employer, and a trip in which the employee responds to a service call when the employee is on call for the employer's business. (*Munyon* v. *Ole's, Inc., supra,* 136 Cal.App.3d at p. 703.)

■ Plaintiff argues the special mission exception is applicable to this case because (1) in giving a coworker a ride home, Brandon performed a work-related service for defendant A.R.B., and (2) when the jobsite was shut down and the employees were sent home early, defendant received a benefit by not having to pay the employees a full day's salary and by avoiding possible liability for workplace injuries caused by hazardous working conditions. We conclude as a matter of law that the special errand exception is not applicable in this case.

The facts surrounding Brandon's providing Jeff Richardson with a ride home are as follows: Richardson had commuted to work with a coworker. That morning the coworker slipped and fell into a mud puddle and was sent home by defendant so the coworker would not get sick by working further in the rain. Thereafter, Brandon offered to give Richardson a ride home. The facts do not indicate that defendant requested or invited Brandon to provide Richardson with transportation.

According to *Boynton* and other cases discussing the special mission exception, an employee may be on a "special errand either as part of his regular duties or at a specific order or request of his employer, . . ." (*Boynton* v. *McKales, supra,* 139 Cal.App.2d at p. 789; *Munyon* v. *Ole's, Inc., supra,* 136 Cal.App.3d at p. 703.) Since providing coemployees with transportation was not a part of Brandon's routine duties, to have the special mission exception apply, A.R.B. must have made a specific order or request that Richardson be taken home by Brandon. On the facts of this case, no such request or order may be found.

Plaintiff contends, relying on *C. L. Pharris Sand & Gravel, Inc.* v. *Workers' Comp. Appeals Bd.,* that an express request by the employer is not necessary to the application of the special errand exception. In that case, the court held that a prerequisite to the exception is a request or invitation by the employer, which may be either express or implied. (*C. L. Pharris Sand & Gravel, Inc.* v. *Workers' Comp. Appeals Bd.* (1982) 138 Cal.App.3d 584, 591 [187 Cal.Rptr. 899].) Even assuming that the law in a workers' compensation case is applicable to a vicarious tort liability case, the facts still do not show any type of request or invitation, either express or implied. Brandon's offering to take Richardson home was purely gratuitous. Defendant A.R.B. never paid or offered to pay Brandon for his services. Nothing in the facts suggests that A.R.B. ever requested or suggested that certain employees provide transportation for other employees.

It is possible for a special mission to be present when an employee gives a ride home to another employee. (See *Harvey* v. *D & L Construction Co.* (1967) 251 Cal.App.2d 48, 52-53 [59 Cal.Rptr. 255].) In that case, unlike the present case, however, the facts presented a reasonable inference not only that the employer had requested his employee to give a coworker a ride home, but that providing such transportation was a part of the employee's routine duties.

Plaintiff's second contention that Brandon was engaged in a special errand for defendant also lacks merit. On the day of the accident, A.R.B. had to shut down all work on the jobsite because of heavy rain. The construction foreman, Mr. Choukalos, testified that the rain caused working conditions around the pipe to be particularly hazardous and that the welders were unable to work in heavy rain. The employees had worked from 7 a.m. to approximately 11 or 11:30 a.m. before the job was closed. Brandon and Richardson left the jobsite shortly thereafter. The employees were not on call for the rest of the day, and they were to assume that the next day was a regular workday unless called by A.R.B.

Plaintiff argues that from defendant's ability to send employees home under hazardous working conditions a benefit to the employer may be inferred because the employer is able to avoid liability for workplace injuries. We disagree. Any benefit to the employer in this case stems only from the ability to stop the employees from doing further work on the project, and the commute home does nothing to add to that benefit. Once the job is stopped, no services or duties are expected of the employees; therefore, the employees simply engage in their normal commute home. The only thing different about this commute is the fact that it occurs earlier in the day than usual. Furthermore, a work stoppage, which causes a delay in work on the project, can hardly be deemed a benefit to the employer.

Even if applicable, the workmen's compensation cases do not support plaintiff's contention that Brandon was on a special errand or mission in this case.

In *General Ins. Co.* v. *Workers' Comp. Appeals Bd.*, the Supreme Court noted that an injury suffered by an employee during an ordinary commute may be compensable if the employee was performing a special mission for his employer. The court then stated: "The employee's conduct is 'special' if it is 'extraordinary in relation to routine duties, not outside the scope of employment.' (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 295 [38 Cal.Rptr. 352, 391 P.2d 832].) *The special mission rule 'is ordinarily*

*held inapplicable when the only special component is the fact that the employee began work earlier or quit work later than usual.'* (1 Larson, *supra*, § 16.12, p. 4-98.)" (*General Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 601 [128 Cal.Rptr. 417, 546 P.2d 1361], italics added.) The court concluded that an employee who drove to work earlier than usual to make coffee was not on a special errand, since the making of coffee was not required by the employer and was simply a routine task performed by the employee who first came to work. (*Id.*, at pp. 601-602.)

The same result was reached by a Court of Appeal in *Baroid* v. *Workers' Comp. Appeals Bd.* (1981) 121 Cal.App.3d 558 [175 Cal.Rptr. 633]. In that case, the employee normally worked an 8 a.m. to 4:30 p.m. shift but frequently was called by the employer to work other hours. At times, the different schedule was arranged in advance, but sometimes the employer simply notified the employee by phone or beeper to report to work immediately. On the day of the accident, the employee went to work at 5 a.m., three hours earlier than usual. The appellate court held the employee was not on a special mission because he frequently was called to work at odd hours, and there was no evidence that the employee was needed to perform some task that was extraordinary compared to his routine duties. (*Id.*, at pp. 566-572.)

In the case at bench, Brandon's commute should be characterized as a regular commute home that was merely taken at an earlier time in the day than his regular commute. These work stoppages were to be expected by the employees, since the union contract provides for them. Also, there is no evidence that Brandon was to perform some task that was extraordinary compared to his routine tasks. In fact, he was not expected to do anything except stop work. We conclude as a matter of law that no special mission is shown by the facts.

B. *Transportation Exception*

Plaintiff argues that because there was some evidence that defendant provided a crew truck to transport employees from its yard in Bakersfield to the McKittrick jobsite and in addition paid the employees a travel allowance, the going-and-coming rule was inapplicable to Brandon's commute at the time of the accident. This argument is specious. Brandon was driving his own vehicle returning to Bakersfield and was not utilizing any means of transportation provided by defendant.

## C. *Travel Allowance Exception*

█ Plaintiff's final contention is that the going-and-coming rule does not apply because defendant paid a travel allowance to its employees. According to Choukalos and Richardson, A.R.B. employees were not paid for their travel time, but they were paid for travel expenses. Richardson testified all the employees received what was called a subsistence pay, which was to compensate the employee for expenses in the use of his car. All employees received this pay as a part of their check each week whether or not the employee actually drove his own vehicle. Richardson believed the travel allowance for this job was about $10 a day. According to the union contract, the employees were to receive a specified travel allowance when the jobsite was more than 15 miles from the union dispatch office in Bakersfield. The amount of the allowance varied with the distance between jobsite and union office. For example, if a job was 30 to 35 miles from the dispatch office the employee would receive $10 travel allowance. If the job was 35 to 40 miles away the employee would receive $13 a day travel allowance. This travel allowance was given even when the employees worked a short day due to weather conditions.

While in certain circumstances payment of travel expenses may be an exception under workers' compensation laws (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944, 947-950 [59 Cal.Rptr. 622, 428 P.2d 606]), the same conclusion has not been reached under the respondeat superior doctrine. (See *Harris* v. *Oro-Dam Constructors, supra,* 269 Cal.App.2d 911.) In *Harris* v. *Oro-Dam Constructors,* an employee of defendant had been driving his own vehicle home after a daily work shift, when he had a collision. Plaintiffs acquired a wrongful death verdict against the employee, but the jury exonerated the employer. The employee lived approximately 23 miles from the jobsite. Pursuant to a union contract, the employees received an hourly wage for an eight-hour shift, which began and ended at the jobsite. Defendant, the employer, did not pay for the employees' travel time, but did pay a daily transportation allowance of $6 as provided in the union contract. Only those employees who lived more than 15 miles from the jobsite received the allowance. Plaintiffs contended the payment of travel expense was an exception to the going-and-coming rule, but the appellate court disagreed.

The *Harris* court first recognized the development of the going-and-coming rule under the principles of respondeat superior. That is, an employer is liable only for those torts of his employees that are committed within the scope of employment, and as a general rule, when the employee is commuting to and from work, he is not within the scope of employment. (*Harris*

v. *Oro-Dam Constructors, supra,* 269 Cal.App.2d at p. 912.) The court further noted the going-and-coming rule has been utilized in a separate but related field of law, workmen's compensation. It also noted that California workmen's compensation cases recognize exceptions to the going-and-coming rule including a travel expense exception; however, the court declined to follow these cases, stating, "Although a healthy symbiosis is possible, precedents developed in one field should not be injected into another without recognition of the separate principles prevailing in each." (*Id.,* at p. 914, fn. omitted.) The court then discussed those differences between the philosophies of tort liability and liability under the workers' compensation laws to support its refusal to find workers' compensation cases as precedent.

The *Harris* court next discussed the possibility of a travel expense exception under the theory of respondeat superior. It stated the two major questions in determining if an employee is acting within the scope of employment are (1) whether the activity benefits the employer's enterprise and (2) whether the employer has the right to control the activity. The court found no benefit to the employer under the facts of the case, holding: "The going and coming rule recognizes that travel between home and work is primarily for the employee's benefit. Benefit is a tangible fact. When a trip for the employee's benefit concurrently produces some additional benefit to the employer, an abstract employment relationship may result. (*Smith* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d at p. 820.) The obverse is not true, that is, hypothesizing an abstract relationship will not produce a benefit where none exists in fact. Payment of a transportation allowance, without more, is equally ineffectual to produce a benefit.

"A transportation allowance may promote the recruitment of applicants living at a distance from the job; or, as is more likely in a collective bargaining situation, it may be demanded as a matter of fairness to workers who incur extra expenses in travel between home and work. Whatever the motivation, the essential purpose of the automobile trip does not change. If, as the going and coming rule denotes, the trip between home and the fixed place of work is primarily for the employee's benefit, the fixed reimbursement allowance does not alter that fact." (*Harris* v. *Oro-Dam Constructors, supra,* 269 Cal.App.2d at p. 917.) In addition, the *Harris* court found that the employer had no right to control the employee's commute. Therefore, the *Harris* court concluded that the employee's trip was outside the scope of his employment despite the payment of the travel allowance. It held the facts of the case were undisputed, and, as a matter of law, an exception to the going-and-coming rule was not demonstrated by those facts. (*Id.,* at p. 918.)

In *Hinman* v. *Westinghouse Elec. Co.*, *supra*, 2 Cal.3d 956, the employees were paid for their travel time to and from the jobsite and also paid travel expenses. The Supreme Court first indicated that exceptions to the going-and-coming rule will be made "where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force." (*Id.*, at p. 962.) The court then stated that the payment of travel expenses and payment for travel time benefited the employer because such payments allowed the employer to enlarge the labor market. The employer's reaching out to a distant or larger labor market increases the risk of injury in transportation and the costs of this risk inherent in the employer's enterprise should be paid for by the employer. The *Hinman* court then concluded: "We are satisfied that, where, as here, the employer and employee have made the travel time part of the working day by their contract, the employer should be treated as such during the travel time, and it follows that so long as the employee is using the time for the designated purpose, to return home, the doctrine of *respondeat superior* is applicable. It is unnecessary to determine the appropriate rule to be applied if the employee had used the time for other purposes. We also need not decide now whether the mere payment of travel expenses without additional payment for the travel time of the employee as in *Harris* v. *Oro-Dam Constructors*, 269 Cal.App.2d 911 [75 Cal.Rptr. 544], reflects a sufficient benefit to the employer so that he should bear responsibility to innocent third parties for the risks inherent in the travel. (Cf. *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* 66 Cal.2d 944, 948 [59 Cal.Rptr. 622, 428 P.2d 606].)" (*Id.*, at pp. 962-963.) The present case squarely presents the question left unanswered in *Hinman*.

Speaking to the question of whether additional exceptions to the going-and-coming rule should be created by the courts in workmen's compensation cases, the Supreme Court stated in *Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd.*, *supra*, 40 Cal.3d at pages 357-358, "Unless the judiciary can devise rules which are fairer, less arbitrary, less problematic in application, and more clearly consistent with the public policies underlying the act, it should leave to the Legislature the major task of restructuring the rules governing employer liability." (Fn. omitted.)

In our view, this principle is equally applicable to the area of employer tort liability. Recognizing that the answer to the question here addressed is not truly a legal one but one of public policy, and also noting that the Supreme Court has not overruled or disapproved the holding in *Harris* v. *Oro-Dam Constructors*, *supra*, 269 Cal.App.2d 911, we follow the reasoning of Justice Freidman and hold that the mere payment of a travel allowance as shown in the present case does not reflect a sufficient benefit to defendant so that it should bear responsibility for plaintiff's injuries.

We have considered and rejected plaintiff's other contentions.

The judgment is affirmed. Defendant to have its costs on appeal.

Franson, Acting P. J., and Martin, J., concurred.

A petition for a rehearing was denied February 18, 1986, and appellant's petition for review by the Supreme Court was denied May 8, 1986. Mosk, J., was of the opinion that the petition should be granted.