[No. D008866. Fourth Dist., Div. One. Apr. 26, 1990.]

MARTIN K. O'CONNOR, Plaintiff and Appellant, v.
McDONALD'S RESTAURANTS OF CALIFORNIA, INC. et al.,
Defendants and Respondents.

**COUNSEL**

Terance J. Kopanski, Dan Zeidman, Lee Ann Smith-Trafzer and Thacher, Hurst, Conaway & Zeidman for Plaintiff and Appellant.

James A. McFall and Neil, Dymott, Perkins, Brown & Frank for Defendants and Respondents.

**OPINION**

**KREMER, P. J.**—Plaintiff Martin K. O'Connor appeals summary judgment favoring defendants McDonald's Restaurants of California, Inc., and McDonald's Corporation (together McDonald's) on his complaint for damages for personal injuries on a theory of McDonald's vicarious liability for the negligence of its employee Evans. O'Connor, injured when his motorcycle collided with an automobile driven by Evans, contends the superior court erred in determining Evans had completely departed from a special errand on behalf of McDonald's and was not acting within the scope of his employment at the time of the accident. Determination whether Evans merely "diverted" rather than "completely departed" from his special errand when the accident occurred requires resolution of disputed triable factual issues. Therefore, we reverse the summary judgment.

# I

## FACTS

In reviewing the propriety of the summary judgment, we state the facts in the light most favorable to O'Connor.

From about 8 p.m. on August 12, 1982, until between 1 and 2 a.m. the next day, Evans and several McDonald's coworkers scoured the children's playground area of McDonald's San Ysidro restaurant. The special cleaning prepared the restaurant for inspection as part of McDonald's "spring-blitz" competition. Evans—who aspired to a managerial position—worked without pay in the cleanup party at McDonald's request. Evans's voluntary contribution of work and time is the type of extra effort leading to advancement in McDonald's organization.

After completing the cleanup, Evans and four fellow workers went to the house of McDonald's employee Duffer. Duffer had also participated in the evening's work. At Duffer's house, Evans and the others talked shop and socialized into the early hours of the morning. About 6:30 a.m., as Evans drove from Duffer's house toward his own home, his automobile collided with O'Connor's motorcycle.

# II

## SUPERIOR COURT PROCEEDINGS

O'Connor filed a lawsuit for negligence against Evans, McDonald's and others. O'Connor complained of serious injuries resulting in permanent disability and the loss of his left leg below the knee. ■ ■ ■ ■ The suit claimed McDonald's was liable for negligence on a theory of respondeat superior.[1]

Essentially, O'Connor claimed Evans was on a "special errand" for his employer McDonald's when he worked on the spring-blitz cleanup on his own time. ■ According to O'Connor, if Evans were on a special errand, then his driving would be exempt from the "going and coming" rule by which an employer ordinarily is not liable for an employee's negligence

---

[1] "Under the doctrine of respondeat superior, an employer is liable for the torts of his employees committed within the scope of their employment. [Citation.]" (*Felix* v. *Asai* (1987) 192 Cal.App.3d 926, 931 [237 Cal.Rptr. 718]; *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755].)

while commuting.[2] Under O'Connor's theory, the special errand began when Evans left his own home and continued until he returned home.

McDonald's sought summary judgment, contending as a matter of law Evans was acting outside the scope of his employment at the time of the accident.

The superior court found Evans was on a special errand for McDonald's when he voluntarily reported for cleanup duties at the San Ysidro restaurant.[3] However, the superior court further found Evans's stop at Duffer's house was a "complete departure" from his special errand.[4] Thus, the court concluded any responsibility of McDonald's for Evans's driving terminated before the accident. The court granted summary judgment for McDonald's. O'Connor appeals.

## III

### ANALYSIS

The central issue before us is of some antiquity. In 1834 Baron Parke addressed the issue: "The master is only liable where the servant is acting in the course of his employment. If he was going out of his way, against his master's implied commands, when driving on his master's business, he will make his master liable; but if he was going on a frolic of his own, without being at all on his master's business, the master will not be liable." (*Joel* v. *Morison* (1834) 6 Car. & P. 501, 503, 172 Eng.Rep. 1338, 1339.)

Unfortunately, as an academic commentator observed in 1923, "It is relatively simple to state that the master is responsible for his servant's torts

---

[2] "Generally, an employee is outside the scope of his employment while engaged in his ordinary commute to and from his place of work. [Citation.] This principle is known as the going-and-coming rule and is based on the theory that the employment relationship is suspended from the time the employee leaves his job until he returns and on the theory that during the normal everyday commute, the employee is not rendering services directly or indirectly to his employer. [Citation.]" (*Felix* v. *Asai, supra*, 192 Cal.App.3d at p. 931.)

However, when "the employee is traveling from his residence or returning to it as part of his usual duties or at the specific request or order of his employer, he is considered to be on a special errand for his employer and thus acting within the scope of his employment. [Citations.]" (*Robbins* v. *Hewlett-Packard Corp.* (1972) 26 Cal.App.3d 489, 494 [103 Cal.Rptr. 184].)

[3] In seeking affirmance, McDonald's does not challenge the court's finding of special errand. (See Code Civ. Proc., § 906.) For purposes of this appeal, we accept that finding without determining its propriety. Such finding is not res judicata or law of the case.

[4] Even where the special errand exception to the going-and-coming rule "is found to be applicable, the employee may yet be found outside the scope of his employment if at the time of the accident he has completely abandoned his employer's business for personal reasons. [Citations.]" (*Felix* v. *Asai, supra*, 192 Cal.App.3d at p. 932.)

only when the latter is engaged in the master's business, or doing the master's work, or acting within the scope of his employment; but to determine in a particular case whether the servant's act falls within or without the operation of the rule presents a more difficult task." (Smith, *Frolic and Detour* (1923) 23 Colum.L.Rev. 444, 463.)

Here we must determine whether the superior court properly concluded as a matter of law that Evans's activity in attending the gathering at Duffer's house constituted a complete departure from a special errand for McDonald's (a frolic of his own) rather than a mere deviation (a detour).

 Whether there has been a deviation so material as to constitute a complete departure by an employee from the course of his employment so as to release employer from liability for employee's negligence, is usually a question of fact. (*Loper* v. *Morrison* (1944) 23 Cal.2d 600, 605 [145 P.2d 1].)

 "In determining whether an employee has completely abandoned pursuit of a business errand for pursuit of a personal objective, a variety of relevant circumstances should be considered and weighed. Such factors may include the intent of the employee, the nature, time and place of the employee's conduct, the work the employee was hired to do, the incidental acts the employer should reasonably have expected the employee to do, the amount of freedom allowed the employee in performing his duties, and the amount of time consumed in the personal activity. [Citations.] While the question of whether an employee has departed from his special errand is normally one of fact for the jury, where the evidence clearly shows a complete abandonment, the court may make the determination that the employee is outside the scope of his employment as a matter of law. [Citations.]" (*Felix* v. *Asai, supra,* 192 Cal.App.3d at p. 932-933.)

 Here the evidence does not clearly show complete abandonment. Instead, the evidence raises triable issues on the factors bearing on whether Evans completely abandoned the special errand in favor of pursuing a personal objective.

A

Evans's Intent

In its motion for summary judgment, McDonald's did not identify any evidence Evans intended to abandon his special errand when he decided to join his coworkers in the gathering at Duffer's house. However, in opposing

McDonald's motion, O'Connor presented evidence bearing on Evans's intent from which a jury might reasonably infer Evans did not completely abandon his special errand when he went to Duffer's house.

The record contains evidence McDonald's encourages its employees and aspiring managers to show greater dedication than simply working a shift and going home. O'Connor presented McDonald's operations and training manual and employee handbook to demonstrate McDonald's fosters employee initiative and involvement in problem solving. Such evidence could reasonably support a finding of "a direct and specific connection" between McDonald's business and the gathering at Duffer's because the gathering was consistent with the "family" spirit and teamwork emphasized by McDonald's in its communications with employees. Such evidence could also reasonably support a finding McDonald's emphasis on teamwork made a group discussion of McDonald's business at Duffer's house a foreseeable continuation of Evans's special errand. The record also contains evidence supporting a reasonable inference Evans went to Duffer's house intending to continue his work on the spring blitz for McDonald's. Much of the conversation during the gathering centered on McDonald's business or concerned employee-manager relations. A "main inspection" was scheduled for the day after the spring blitz cleanup of the playground area. The persons at Duffer's house continued their mental inventory of last minute things they could do to improve their chances in the spring blitz competition. According to Evans, the group was concerned about whether "we were going to win [the spring blitz], and we did." The group discussed the cleaning activities of the spring blitz to determine whether they might return to the restaurant to correct any deficiencies. According to Duffer, the activity during the gathering at his house consisted of "sitting around talking about the blitz and relaxing." The group also "talked about other stores, how they had been doing [and] about passing the quality checks that we had or spot checks that we had."

Thus, evidence and reasonable inferences bearing on Evans's intent raise triable factual issues about whether he completely abandoned the special errand.

## B

### Nature, Time, and Place of Evans's Conduct

McDonald's contends the gathering at Duffer's house after normal business hours was an informal social function unconnected to Evans's special

errand for his employer. However, O'Connor submitted evidence suggesting the gathering benefited McDonald's, occurred at Evans's fellow employee's house immediately after McDonald's place of business closed, consisted of continuation of employees' discussion about the spring blitz, and was inspired by the spirit of competition engendered by McDonald's. That evidence and reasonable inferences bearing on the nature, time and place of Evans's conduct raise triable factual issues about whether he completely abandoned the special errand.

## C

### Work Evans Was Hired to Do

McDonald's contends the asserted managerial discussions at Duffer's house went beyond the scope of work Evans was hired to do. However, O'Connor introduced evidence suggesting Evans was in training to become a manager and was expected to show initiative in his work to be worthy of future promotion. Such evidence raises an inference Evans's participation in discussions at Duffer's house did not exceed the scope of his assigned work.

## D

### McDonald's Reasonable Expectations

In a declaration supporting McDonald's motion for summary judgment, Evans's direct supervisor Cardenas asserted Evans "was under no instruction from me, or any other authorized employee of MCDONALD'S, with respect to his activities after he left the restaurant. [¶] . . . I had no knowledge that other co-employees would go to Joe Duffer's house after the final clean-up." McDonald's also presented evidence it required official employee conferences be attended by a salaried manager and no such salaried manager attended the Duffer gathering.[5] However, these facts do not compel a finding as a matter of law contrary to O'Connor's claim McDonald's implicitly encouraged Evans to continue his special errand by conferring with co-employees on what they might do to win the spring blitz competition.

---

[5] Evans and Duffer were not salaried managers. Instead, they were merely "shift" or "swing" managers. The most senior person attending the gathering was second assistant manager Lindo, an hourly employee who lacked keys to the restaurant and lacked authority to conduct a company "rap" session.

## E

### Evans's Freedom in Performing Duties

O'Connor presented evidence Evans had considerable latitude in performing his duties. Evans was not paid for his performance of the special errand. His work was voluntary and consistent with other occasions where he and fellow workers were expected to pitch in to help the team effort without punching in on the time clock.

## F

### Amount of Time Consumed in Personal Activity

McDonald's contends Evans stopped at Duffer's home for four hours on his own volition, for his own enjoyment and without McDonald's explicit direction or suggestion. However, O'Connor presented evidence showing much of the discussion at Duffer's home was related to Evans's employment at McDonald's. Such evidence raises a triable factual issue about the combination of personal entertainment and company business at Duffer's house. ■ "Where the employee may be deemed to be pursuing a business errand and a personal objective simultaneously, he will still be acting within the scope of his employment." (*Felix* v. *Asai, supra,* 192 Cal.App.3d at p. 932.)

## G

### Conclusion

The superior court found—and the parties here do not challenge—Evans's voluntary participation in the spring blitz until after midnight constituted a special errand on McDonald's behalf. The question here is whether the gathering at Duffer's to discuss the spring blitz and socialize constituted a complete departure from the special errand.

Because disputed factual questions and reasonable inferences preclude determination as a matter of law of the issue whether Evans completely abandoned his special errand, the court should have denied McDonald's motion for summary judgment.

## DISPOSITION

The summary judgment is reversed. O'Connor to have costs on appeal.

Wiener, J., and Froehlich, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 18, 1990.