*371
 
 Opinion
 

 WORK, J.
 

 Kent Arthur Blackman appeals a summary judgment granted in favor of Great American First Savings Bank (Great American), stating it was not vicariously liable for injuries Blackman incurred when he was involved in a collision with Sue Petersen-Parker (Petersen), a Great American employee. At the time of the collision, Petersen was leaving the Great American parking lot and intending to drive to San Diego State University. Petersen, a full-time Great American payroll accountant, was pursuing a business administration degree with emphasis in accounting under Great American’s educational assistance program, which provided her with financial aid. In return, Petersen signed a contract which stated she agreed to remain an employee of Great American for five years, or reimburse a portion of the tuition-related funds provided by her employer. Blackman contends the trial court erred in granting summary judgment for Great American. We disagree and accordingly affirm the judgment.
 

 Factual and Procedural Background
 

 On December 7, 1988, Blackman was seriously injured when his motorcycle struck Petersen’s car which had pulled into his path while attempting to make a left-hand turn. In an all too common motorcycle accident scenario, Blackman struck the side of Petersen’s car, was thrown over the car and onto the asphalt, and came to rest beneath and against a parked car. At the time of the accident, Petersen had just completed her work shift and was on the way to San Diego State University. She was using her own car and Great American did not reimburse her for either travel time or mileage expenses.
 

 Through the educational assistance program, Great American agreed to reimburse Petersen for her tuition and book expenses for all relevant courses. The educational assistance program was established by contract language which stated:
 

 “WHEREAS, as a condition of continued, full-time employment at Great American, it is considered desirable by Bank that employees periodically avail themselves of opportunities to augment their educational background
 

 Petersen signed this contract which also stated she would pursue a job-relevant degree, maintain passing grades in every class, take no more than two classes per semester, maintain a satisfactory performance rating at work, and remain an employee of Great American for at least five years or be forced to repay Great American’s financial assistance.
 

 
 *372
 
 Petersen was already pursuing her degree at San Diego State University before coming to work for Great American. She testified she would have continued to pursue this degree regardless of whether she received aid through the educational assistance program. Following this accident, her participation in the educational assistance program was renewed; she eventually graduated from college; and she was immediately promoted at Great American. Only 1 to 2 percent of all Great American employees ever take advantage of the educational assistance program.
 

 Discussion
 

 I
 

 Under the doctrine of respondeat superior, an employer is liable for those torts committed by employees acting within the scope of their employment.
 
 (Felix
 
 v.
 
 Asai
 
 (1987) 192 Cal.App.3d 926, 931 [237 Cal.Rptr. 718].) The going-and-coming doctrine states an employee is outside the scope of his employment while engaged in the ordinary commute to and from his place of work.
 
 (Id.
 
 at p. 931.) This rule is based on the principle that the employment relationship is suspended from the time the employee leaves his place of work until he returns.
 
 (Ibid.)
 

 Generally, whether an employee is within the scope of employment is a question of fact; however, when the facts of a case are undisputed and conflicting inferences may not be drawn from those facts, whether an employee is acting within the scope of employment is a question of law.
 
 (Caldwell
 
 v.
 
 A.R.B., Inc.
 
 (1986) 176 Cal.App.3d 1028, 1035 [222 Cal.Rptr. 494].)
 

 II
 

 Exceptions are made to the going-and-coming rule when the employee’s trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force.
 
 (Felix
 
 v.
 
 Asai, supra,
 
 192 Cal.App.3d at p. 931.)
 

 The special errand doctrine is an exception to the going-and-coming rule which states an employee is within the scope of his employment while coming from home or returning to it while on a special errand either as part of his regular duties or at a specific order or request of his employer. (192 Cal.App.3d at p. 931.)
 

 The trial court found Petersen’s attendance of college classes was not a regular duty required of Great American employees; while this program was
 
 *373
 
 available and Great American may have encouraged qualified employees to participate, employees were under no specific order or direct request to do so; and thus, Petersen’s attendance at college classes did not fall within the special errand exception to the going-and-coming rule.
 

 Here, Blackman’s contention that Petersen’s college attendance constituted a special errand for Great American is without evidentiary support. Blackman contends participation in the educational assistance program was a mandatory condition of employment. Blackman hinges his argument on the educational assistance program contract language phrase “as a condition,” which he asserts indicates a mandatory obligation on the part of the employee to pursue supplementary education. However, this phrase directly precedes the permissive clause, “it is considered desirable,” which suggests no mandatory obligations were imposed. It is undisputed that, at most, only 1 to 2 percent of all Great American employees ever participate in the program. In addition, there is no requirement that one must enter the educational assistance program, or to continue in it once entered, as a condition of employment. The uncontradicted parameters of the program are contained in Great American’s guidelines entitled “Educational Assistance” dated February 10, 1989, a copy of which was incorporated into the materials presented to the trial court.
 

 To be eligible for Great American’s educational assistance program, one must
 
 first
 
 be a full-time employee with either one-year longevity
 
 or
 
 officer status,
 
 and
 
 have received a “3” or better rating on his/her latest performance evaluation. To remain eligible for continued tuition aid, the employee must maintain a “C” average. There is no requirement an employee continue in the program to maintain employment or employment status. However, if the employee terminates full-time employment in less than five years after entering the educational assistance program, he/she is obligated to repay an amortized portion of the tuition funds received in proportion to the five-year employment requirement.
 

 Thus, it is undisputed that Petersen would suffer no penalty for discontinuing the program or leaving employment in less than five years. To the extent she would be required to reimburse a portion of the funds expended by Great American for her tuition, this is reimbursement for funds actually used for her personal benefit which, except for this program, she would have been personally responsible and for which she personally received full value.
 

 Thus, the court correctly disregarded Blackman’s unreasonable interpretation of the contract and categorized the educational assistance program as a “fringe benefit” not within the scope of employment.
 

 
 *374
 
 III
 

 In analyzing cases of vicarious liability, the inquiry should be whether the risk may fairly be regarded as typical of, or broadly incidental to, the employer’s business.
 
 (Perez
 
 v.
 
 Van Groningen & Sons, Inc.
 
 (1986) 41 Cal.3d 962, 968 [227 Cal.Rptr. 106, 719 P.2d 676].) The risk arising out of the employment should not be so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer’s business.
 
 (Id.
 
 at p. 968.) Although an exception to the going- and-coming rule will be made when the trip involves an incidental benefit to the employer, the benefit must be sufficient enough to justify making the employer responsible for the risks inherent in the travel.
 
 (Hinman
 
 v.
 
 Westinghouse Elec. Co.
 
 (1970) 2 Cal.3d 956, 962-963 [88 Cal.Rptr. 188, 471 P.2d 988].)
 

 Here, notwithstanding Great American’s apparent view that they would receive a benefit from Petersen’s college attendance, the reimbursement for college coursework can only be seen as broadly collateral to Great American’s business, banking. Although Great American may have enhanced its banking business by facilitating its employees’ educational advancement, the schoolwork has no direct impact on the day-to-day banking operations and the benefit is derived only indirectly over time. (Contrast facts in
 
 Hinman
 
 v.
 
 Westinghouse Elec. Co., supra,
 
 2 Cal.3d 956 [employer paid employee’s travel time and expenses to allow employer to enlarge his labor market].)
 

 Blackman points out there is no requirement that an employee’s act benefit an employer for respondeat superior to apply. (See
 
 Perez
 
 v.
 
 Van Groningen & Sons, Inc., supra, 41
 
 Cal.3d at p. 969 [employer need not be benefitting employer if tort was committed while acting within scope of employment].) Here, however, if there was no significant benefit, the going- and-coming rule precludes liability, since the commute was not at the employer’s specific order or request under the special errand exception and there is no other applicable exception.
 

 Here, any benefit conveyed upon Great American is not a substantial benefit to its banking functions. We conclude the trial court was correct in determining Petersen was not in the scope of employment as a matter of law.
 

 IV
 

 Workers’ compensation law takes a different approach to exceptions to the going-and-coming rule as demonstrated in
 
 Dimmig
 
 v.
 
 Workmen’s Comp.
 
 
 *375
 

 Appeals Bd.
 
 (1972) 6 Cal.3d 860 [101 Cal.Rptr. 105, 495 P.2d 433], In
 
 Dimmig,
 
 the Workers’ Compensation Board denied benefits to a widow whose husband was killed while returning from a night college class. The Supreme Court annulled the Workers’ Compensation Board’s decision and remanded for proceedings consistent with its opinion that the employee was within the scope of employment as his class attendance was directly related to his job functions and contemplated by the employment contract.
 

 While
 
 Dimmig
 
 is factually similar, workers’ compensation cases are not controlling with respect to exceptions to the going-and-coming rule in cases involving respondeat superior.
 
 (Caldwell
 
 v.
 
 A.R.B., Inc., supra,
 
 176 Cal.App.3d at p. 1035.) Workers’ compensation and respondeat superior law are driven in opposite directions based on differing policy considerations. Workers’ compensation has been defined as a type of social insurance designed to protect employees from occupational hazards, while respondeat superior imputes liability to an employer based on an employee’s fault because of the special relationship.
 
 (Harris
 
 v.
 
 Oro-Dam Constructors
 
 (1969) 269 Cal.App.2d 911, 914, fn. 1, 915 [75 Cal.Rptr. 544].) Further, courts heed statutory admonitions for a liberal construction favoring coverage in workers’ compensation cases which are not present in respondeat superior law.
 
 (Id.
 
 at p. 915.)
 

 Whether an employer is liable under respondeat superior is not truly a legal question, but one of public policy.
 
 (Caldwell
 
 v.
 
 A.R.B., Inc., supra,
 
 176 Cal.App.3d at p. 1042.) Here, the trial court properly rejected the
 
 Dimmig
 
 analysis as it applies to this case, stating: “I can see a strong policy in workmen’s compensation cases to find any basis for determining that the person is ‘in the course and scope’ for purposes of awarding workmen’s compensation.” The court also rejected the
 
 Dimmig
 
 analysis as a matter of public policy in that companies will be dissuaded from helping people obtain an education and insurance costs will necessarily be increased based on this new found liability.
 

 Blackman contends if vicarious liability would arise in a workers’ compensation case and not in a third party negligence action, an anomaly would be created in the law. While this may be true, it is no more anomalous than the going-and-coming rule. Had Petersen been on her way home rather than going to school, there would be no question she was
 
 not
 
 in the scope of employment. Further, had Petersen paid her own expenses rather than receiving financial aid via the educational assistance program, there likewise would have been no question that she was
 
 not
 
 in the scope of employment.
 

 To hold the factual scenario dispositive while overlooking the fundamental historical and policy distinctions between worker’s compensation and respondeat superior law would be error.
 

 
 *376
 
 Disposition
 

 Judgment affirmed.
 

 Kremer, P. J., and Wiener, J., concurred.