[No. A055529. First Dist., Div. One. Mar. 18, 1993.]

HANS PATRICK ANDERSON, Plaintiff and Appellant, v.
PACIFIC GAS AND ELECTRIC CO., Defendant and Respondent.

**COUNSEL**

Sterns, Walker & Lods, Susie Injijian and Deborah M. Heler for Plaintiff and Appellant.

Gutierrez & Associates, Vincent A. Ruiz and Gina M. DeVito for Defendant and Respondent.

**OPINION**

**DOSSEE, J.**—The trial court granted defendant's motion for summary judgment, finding that based upon the undisputed facts, the doctrine of respondeat superior did not apply when an employee of defendant was involved in an automobile accident while on his way home from work. Plaintiff contends the fact the employee was receiving payment for his travel expenses meant the employee was acting within the scope of employment when traveling to and from his job. Plaintiff also contends there are several material disputed factual issues.

We conclude that the payment of a travel allowance does not alter the general rule that an employee is not acting within the scope of employment while commuting to and from work. We find no material disputed factual issues in this case and affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff Hans Anderson was injured when his car collided with a car driven by Donald Henry, an employee of Pacific Gas and Electric Co.

(hereafter, PG&E). Henry and his passenger, John Quintana, also a PG&E employee, had finished work for the day and were returning home when Henry's car crossed the center line of the road.

Henry and Quintana suffered minor injuries in the crash, and PG&E authorized them to claim workers' compensation benefits.

Henry and Quintana were apprentice linemen who worked out of various locations for PG&E. At the time of the accident, they were assigned to report to the Potrero Power Plant in San Francisco (their "point of assembly"), from where they would travel to various job sites in company vehicles.

Pursuant to the union contract governing Henry and Quintana's employment, they received a per diem travel allowance whenever they reported to a point of assembly at least 25 miles from their home. Henry and Quintana lived in Sonoma County and received a per diem of $12.50 and $17.25, respectively, for their travel to the Potrero Power Plant. They received the per diem payment regardless of how they got to work, or whether they actually incurred any expense.

In his complaint for personal injuries, Anderson alleged that under the doctrine of respondeat superior, PG&E was vicariously liable for his injuries. PG&E moved for summary judgment, contending that Henry was not acting within the scope of his employment at the time of the accident. The trial court agreed with PG&E, and finding no triable issue of material fact, granted the motion for summary judgment. The court entered judgment in favor of PG&E, and Anderson appeals from that judgment.

DISCUSSION

I. *Summary Judgment Principles*

■ Summary judgment is proper when there are no triable issues as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The moving party's affidavits are construed strictly, the opposing party's liberally. (*California Aviation, Inc.* v. *Leeds* (1991) 233 Cal.App.3d 724, 731 [284 Cal.Rptr. 687].) Any doubts as to the propriety of granting a motion for summary judgment should be resolved in favor of the party opposing it. (*Ibid.*)

II. *Vicarious Liability*

A. *Questions of Law*

■ Anderson contends Henry was acting within the scope of his employment when the accident occurred because Henry was receiving a travel

allowance from PG&E. Thus, according to Anderson, PG&E is vicariously liable for Anderson's injuries under the doctrine of respondeat superior.

Existing case law is squarely against Anderson's position. Anderson counters that decisions from other districts of this court are wrong and should be disregarded. Anderson believes that the policies underlying the doctrine of respondeat superior support his right to recover in this case, and that to allow Henry to recover workers' compensation benefits while at the same time declaring Henry was not acting within the scope of employment is inconsistent.

■■■ We start with the premise that under the doctrine of respondeat superior, an employer is vicariously liable for torts committed by an employee within the scope of employment. (*Perez* v. *Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967 [227 Cal.Rptr. 106, 719 P.2d 676].) The doctrine is based upon a policy that an employer should be responsible for losses caused by the torts of its employees that occur in the conduct of the employer's enterprise. (*Ibid.*)[1]

An employee is not considered to be acting within the scope of employment when going to or coming from his or her place of work. (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 722 [159 Cal.Rptr. 835, 602 P.2d 755]) This rule, known as the going-and-coming rule, has several exceptions. Generally, an exception to the going-and-coming rule will be found when the employer derives some incidental benefit from the employee's trip. (*Blackman* v. *Great American First Savings Bank* (1991) 233 Cal.App.3d 598, 604 [284 Cal.Rptr. 491].) One specific exception is when the employer compensates the employee for travel time. (See *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962 [88 Cal.Rptr. 188, 471 P.2d 988].)

■■■ Anderson invokes this exception, pointing to the per diem travel allowance PG&E paid to Henry for his commuting expenses.

In *Caldwell* v. *A.R.B., Inc.* (1986) 176 Cal.App.3d 1028 [222 Cal.Rptr. 494], the facts and issues were nearly identical to those in the instant case. The employee in *Caldwell* was an apprentice pipefitter who received a $10 travel allowance, pursuant to a union contract, because his job site was more than 15 miles from the local union office. He received the allowance regardless of whether he drove his own car. While driving home from the

---

[1] Three reasons have been suggested for imposing liability on an employer: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury. [Citations.]" (*Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 209 [159 Cal.Rptr. 835, 602 P.2d 755].)

job site, he was involved in an auto accident in which he was killed and the plaintiff was injured. The *Caldwell* court found the payment of a travel allowance, without more, did not provide a benefit to the employer sufficient to impose on the employer the liability for the plaintiff's injuries. (*Id.* at p. 1041.)

The *Caldwell* court followed the decision in *Harris* v. *Oro-Dam Constructors* (1969) 269 Cal.App.2d 911 [75 Cal.Rptr. 544], which again involved an employee receiving a travel allowance pursuant to a union contract. As explained in *Harris*: "A transportation allowance may promote the recruitment of applicants living at a distance from the job; or, as is more likely in a collective bargaining situation, it may be demanded as a matter of fairness to workers who incur extra expenses in travel between home and work. Whatever the motivation, the essential purpose of the automobile trip does not change. If, as the going and coming rule denotes, the trip between home and the fixed place of work is primarily for the employee's benefit, the fixed reimbursement allowance does not alter that fact." (*Id.* at p. 917.)

Both the *Caldwell* and the *Harris* courts acknowledged that workers' compensation decisions had recognized an exception to the going-and-coming rule when the employer defrayed its employee's travel expenses. (See *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944, 948-949 [59 Cal.Rptr. 622, 428 P.2d 606].) Anderson seizes upon this anomaly and claims no justification has ever been advanced for this disparity between tort law and workers' compensation law.

■ While the goal of both the doctrine of respondeat superior and the Workers' Compensation Act is to provide compensation to injured victims, the test for determining whether an employee was injured on the job for the purposes of workers' compensation is not identical with the scope of employment test.[2] (*Perez* v. *Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 967; *Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at p. 962, fn. 3.) Workers' compensation decisions can be helpful in determining whether an employer should be vicariously liable, but they are not controlling precedent. (*Perez,* at p. 967, fn. 2, citing *Caldwell* v. *A.R.B., Inc., supra,* 176 Cal.App.3d at p. 1035.)

■ Contrary to Anderson's claim, the courts have articulated the justification for disparate results in vicarious liability and workers' compensation cases many times. (See e.g. *Munyon* v. *Ole's Inc.* (1982) 136 Cal.App.3d

[2]The test under workers' compensation law is whether the injuries sustained by the employee were "arising out of and in the course of the employment." (Lab. Code, § 3600, subd. (a).)

697, 702-703 [186 Cal.Rptr. 424]; *Church* v. *Arko* (1977) 75 Cal.App.3d 291, 298-300 [142 Cal.Rptr. 92]; *Harris* v. *Oro-Dam Constructors, supra,* 269 Cal.App.2d at p. 915; see also *Saala* v. *McFarland* (1965) 63 Cal.2d 124 [403 P.2d 400].)[3] We will not repeat the analysis set forth in these cases, but we will note that under Legislative direction to construe the provisions of the Workers' Compensation Act liberally (Lab. Code, § 3202), the courts have tended to be very generous in finding injured workers are entitled to workers' compensation benefits. (See *Blackman* v. *Great American First Savings Bank, supra,* 233 Cal.App.3d at p. 605.)

Anderson argues that PG&E is unfairly obtaining a "double benefit" because it is escaping liability both to its injured employee and to him, the innocent third party. Anderson maintains that, as a matter of public policy, it is incumbent upon the courts to compensate innocent third parties in this situation.

PG&E is not receiving any benefit, let alone a double benefit. Presumably, PG&E paid insurance premiums for workers' compensation coverage, or it is self-insured and it directly paid for Henry's and Quintana's injuries. PG&E is not escaping liability to its injured employee. Nor is PG&E escaping liability for Anderson's injuries, as there are no grounds on which to assign liability to PG&E. There is no evidence PG&E was at fault, and Henry was not on the job when the accident occurred. PG&E is not an insurer for its employees.

Anderson states Henry carried only the statutory minimum, $15,000, of automobile insurance for bodily injury liability (Veh. Code, § 16056, subd. (a)). He asserts this minimal amount of insurance is inadequate, and therefore, the courts must adopt a strong policy of compensating injured victims by liberally applying the doctrine of respondeat superior.

The record does not reveal the extent of Henry's insurance coverage, but in any event, it is not for this court to second-guess the Legislature on the amount of insurance motorists should be required to carry. The fact PG&E paid Henry a travel allowance does not automatically make it vicariously liable for Anderson's injuries.

B. *Questions of Fact*

Anderson contends summary judgment was inappropriate because there are several disputed factual issues.

---

[3]The travel allowance disparity highlighted in this case is not the only situation in which workers' compensation and tort law produce different results. (See *Blackman* v. *Great American First Savings Bank, supra,* 233 Cal.App.3d at pp. 604-605 [employee travel to class to improve job skills]; (*Munyon* v. *Ole's Inc., supra,* 136 Cal.App.3d at pp. 701-702 [employee travel to collect wages].)

■ Whether an employee was acting within the scope of employment when he or she committed the tort is a question of fact, unless the facts are undisputed and no conflicting inferences are possible. (*Miller* v. *Stouffer* (1992) 9 Cal.App.4th 70, 78 [11 Cal.Rptr.2d 454].)

■ Anderson asserts this case is factually distinguishable from *Caldwell* because there is evidence PG&E benefitted from paying its workers a per diem travel allowance. He suggests that the travel allowance allowed PG&E to draw employees from a wider geographic area, and to require its employees to report to various points throughout that area.

Anderson relies upon the Supreme Court's opinion in *Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d 956. In *Hinman,* the employee was an elevator constructor's helper who traveled from his home directly to the job site. He was paid wages for his travel time and an allowance for his travel expenses. The Supreme Court observed that by paying for travel time and travel expenses, the employer was deriving a benefit by attracting employees from beyond the employer's normal labor market. (*Id.* at p. 962.) The court held that where travel time is part of the work day, the doctrine of respondeat superior is applicable. (*Ibid.*) The court, however, expressly declined to decide whether the mere payment of travel expenses would reflect a sufficient benefit to the employer so that the employer should bear responsibility for the risk of injuries to innocent third parties. (*Id.* at pp. 962-963, citing *Harris* v. *Oro-Dam Constructors, supra,* 269 Cal.App.2d 911.)

While cognizant of the *Hinman* decision, the court in *Caldwell* v. *A.R.B., Inc., supra,* 176 Cal.App.3d 1028, decided the payment of a travel allowance did not provide a sufficient benefit to the employer so as to impose liability for the plaintiff's injuries. We are similarly satisfied that the payment of the $12.50 per diem to Henry did not provide PG&E with a sufficient benefit so that it should bear the responsibility for Anderson's injuries. While we hesitate to characterize the per diem as nominal, we doubt that it is a substantial factor in accepting PG&E employment, or in allowing PG&E to change an employee's point of assembly.

Anderson maintains there is a question of fact as to whether Henry was engaged in a special errand for PG&E at the time of the accident. Henry's special errand, according to Anderson, was delivering his coworker Quintana to a park-and-ride lot in Cotati.

■ Another exception to the going-and-coming rule has been found when the employee is running a "special errand" for his or her employer. (*Blackman* v. *Great American First Savings Bank, supra,* 233 Cal.App.3d at

p. 602.) An employee is considered to be acting within the scope of employment "while on a special errand either as part of his regular duties or at a specific order or request of his employer. [Citation.]" (*Ibid.*)

 Driving Quintana to and from work was not part of Henry's regular duties, nor was it done at the specific direction of PG&E. Henry and Quintana had an informal arrangement between themselves to drive one another to work on alternate days. Anderson seeks to apply the special errand exception because PG&E allegedly encourages carpooling, but there is a considerable difference between encouraging socially beneficial conduct and requiring certain activities as part of one's job. (See *Blackman* v. *Great American First Savings Bank, supra,* 233 Cal.App.3d at pp. 602-603 [encouraging employees to attend college classes does not fall within the special errand exception to the going-and-coming rule]; see also *Caldwell* v. *A.R.B., Inc., supra,* 176 Cal.App.3d at pp. 1036-1038 [providing coworker ride home not a special errand when employer made no specific order or request to provide ride].)

Anderson attempts to compare this case to *O'Connor* v. *McDonald's Restaurants* (1990) 220 Cal.App.3d 25 [269 Cal.Rptr. 101], in which an employee volunteered for a special work party to clean up the employer's premises. After completing the cleanup, the employee and several fellow workers went to another employee's house where they "talked shop" and socialized. (*Id.* at p. 28.) The Court of Appeal held a question of fact existed as to whether the employee was still engaged in a special errand for his employer when he collided with a motorcyclist after leaving the coworker's house. (*Id.* at p. 33.)

The facts in *O'Connor* are simply not comparable to the instant case. It was conceded in *O'Connor* that the employee's participation in the cleanup constituted a special errand for his employer and the question was whether he had abandoned that errand when he went to the coworker's house. (220 Cal.App.3d at p. 33.) Here, Henry was driving home after completing his regular shift, and the fact he was going to take Quintana to a park-and-ride lot on the way is irrelevant. Anderson's contention that Henry was engaged in a special errand because he was carpooling has no merit.

Anderson argues a triable issue exists as to whether there was an implied agreement that the employment relationship would continue during the commute. He suggests the travel allowance was intended to compensate for travel time as well as expense.

The undisputed facts show that Henry was paid an hourly wage for an eight-hour shift, for the hours of 7 a.m. to 3:30 p.m. (the accident occurred

at approximately 3:45 p.m.). The union contract specified that employees "who provide their own board and lodging" were to be entitled to an expense allowance. There is no material factual dispute as to the character of the travel allowance. There is no evidence Henry was paid for his travel time. (Compare *Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at p. 962.)

Finally, Anderson asserts that a jury could agree with PG&E's determination that the collision was an industrial accident.

As previously discussed, workers' compensation law differs in certain respects from tort law, and in particular, the two areas of law differ when an employee receives a travel allowance. PG&E's determination was based upon workers' compensation law. It does not affect the resolution of this case, which must be based upon tort law.

The judgment is affirmed.

Newsom, Acting P. J., and Stein, J., concurred.