[No. B173641. Second Dist., Div. Three. June 9, 2005.]

KRISTI L. SUNDERLAND et al., Plaintiffs and Appellants, v.
LOCKHEED MARTIN AERONAUTICAL SYSTEMS SUPPORT
COMPANY et al., Defendants and Respondents.

4

Law Offices of Volodar S. Kuzyk and Al Schallau for Plaintiffs and Appellants.

Haight, Brown & Bonesteel, George Christensen and Rita Gunasekaran for Defendant and Respondent.

OPINION

KITCHING, J.—

## INTRODUCTION

In this appeal we discuss the differing purposes of the workers' compensation law and the respondeat superior doctrine of vicarious employer liability. We hold that the "commercial traveler rule" of workers' compensation law may not be incorporated into the respondeat superior doctrine.

In workers' compensation law, a worker is covered, without regard to fault, if the activity which injures the employee arises "out of and in the course of the employment." The commercial traveler rule provides that during the period an employee travels on the employer's business, the employee is within the "course of employment," which includes the activities of obtaining food and shelter.

By contrast, the respondeat superior doctrine makes an employer vicariously liable for an employee's torts committed within the "scope of employment." If the employee commits the tort while engaged in purely private purposes, however, such private conduct is outside the scope of employment and cannot form the basis for an employer's respondeat superior liability.

In this case, the injuries to plaintiffs were allegedly caused by an employee of defendant corporation, as the employee pursued the purely private activity of buying food at a fast-food restaurant. Plaintiffs argue that because that employee was in California pursuant to his employer's temporary work assignment, this court should borrow the commercial traveler rule from workers' compensation law and apply it to the respondeat superior doctrine to hold the corporation vicariously liable for its employee's alleged tort. As we will explain, the differing purposes of workers' compensation law and the respondeat superior doctrine do not permit incorporation of the commercial traveler rule into respondeat superior vicarious liability.

## PROCEDURAL HISTORY

In a June 6, 2000, complaint against defendant Ali Mazloom, plaintiff Kristi L. Sunderland alleged a cause of action for negligence and Robert Sunderland alleged a cause of action for loss of consortium. The complaint arose from an automobile collision in Lancaster, California, on June 16, 1999. Plaintiffs later amended their complaint to add Mazloom's employer, Lockheed Martin Aeronautical Systems Support Company (LMASSC), as a defendant.

The trial court granted LMASSC's motion for summary judgment and entered judgment for LMASSC on December 11, 2003. Plaintiffs filed a timely notice of appeal.

## STANDARD OF REVIEW

■ "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

## FACTS

Between 8:00 and 9:00 p.m. on June 16, 1999, while Mazloom and Kristi Sunderland waited in the drive-through lane at an In-N-Out Burger Restaurant in Lancaster, California, Mazloom's vehicle collided with the rear of Sunderland's vehicle.

On the date of the collision, LMASSC, a Lockheed Martin Corporation subsidiary, employed Mazloom as a field service representative. Headquartered in Marietta, Georgia, LMASSC provides after-market technical field support to government and military customers which own and operate aircraft manufactured by Lockheed Martin Corporation. LMASSC employs field service representatives, such as Mazloom, throughout the world where customers' personnel and aircraft are located. Between assignments, field service representatives work in Marietta, Georgia.

Mazloom was assigned to provide technical field support to LMASSC's military customer at Edwards Air Force Base. On May 12, 1999, Mazloom left Marietta, Georgia and drove his vehicle to Lancaster, California, arriving on May 15, 1999. Expecting to work at Edwards Air Force Base for several months, Mazloom rented a furnished apartment in Lancaster and moved in on June 3, 1999. Mazloom's job required him to perform all work at the base where aircraft were located and where he could work with other LMASSC

and customer personnel. Mazloom and other LMASSC personnel had office space on the base, and Mazloom was not required to work away from Edwards Air Force Base.

On June 15, 1999, LMASSC cut short Mazloom's field assignment to Edwards Air Force Base and notified him he would start a multi-year field assignment in Australia in mid- to late July 1999. On his last work day at Edwards Air Force Base on June 16, 1999, Mazloom worked until mid-morning, clearing out his office and coordinating with other LMASSC personnel. He then drove to his Lancaster apartment and spent the afternoon packing and terminating the rental of that apartment. In the evening, Mazloom drove to his father-in-law's residence in Lancaster to visit and say goodbye. After leaving his father-in-law's residence, Mazloom drove to the In-N-Out Burger Restaurant to buy some food for dinner. In the drive-through lane, Mazloom's vehicle collided with the rear of plaintiff Kristi Sunderland's vehicle, which was ahead of him in line. Mazloom and Sunderland exchanged information. Mazloom then picked up his food, drove to his apartment, and ate his food. Mazloom owns his vehicle. LMASSC has no ownership interest in his vehicle.

Mazloom left Lancaster on June 17, 1999, to drive to Marietta, Georgia. Mazloom's field assignment at Edwards Air Force Base concluded when he arrived in Marietta, Georgia on July 19, 1999.

While working at Edwards Air Force Base, Mazloom made his own lodging arrangements. LMASSC reimbursed Mazloom's lodging cost in Lancaster and paid Mazloom a per diem allowance for food and incidental expenses, because LMASSC assumes that field service representatives incur higher costs working and living away from their Georgia residences. LMASSC permits field representatives to use their own vehicles for travel to field assignments, in part to enable them to have personal transportation while on a field assignment. Mazloom drove his vehicle to California, drove it while he lived in Lancaster and worked at Edwards Air Force Base, and drove it back to Marietta, Georgia. LMASSC paid Mazloom a mileage allowance for the trip from Marietta to Lancaster, and for the return trip from Lancaster to Marietta, but did not pay Mazloom a mileage or transportation allowance for his use of his vehicle while he lived in Lancaster and commuted to work at Edwards Air Force Base.

The trial court found that the evidence showed that on the evening of June 16, 1999, Mazloom was involved only in personal activities and was not acting in the scope of his employment when the accident occurred. Therefore LMASSC was not vicariously liable for the accident under the respondeat superior doctrine.

8

## ISSUE

Plaintiffs claim that the "commercial traveler rule" of worker's compensation should be applied to expand the definition of the "scope of the employment" required for application of the respondeat superior doctrine.

## DISCUSSION

Plaintiffs argue that the "commercial traveler rule" of the workers' compensation system should be applied in this case to expand the definition of the "scope of the employment" under the respondeat superior doctrine. As we articulate, the statutory workers' compensation system and the common law tort doctrine of respondeat superior differ significantly. No authority supports application of the commercial traveler rule to create respondeat superior liability.[1] We conclude that the commercial traveler rule of workers' compensation law does not apply to this appeal.

### A. *The Respondeat Superior Doctrine*

■ The respondeat superior doctrine makes an employer vicariously liable for torts of its employee committed within the "scope of the employment." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 [48 Cal.Rptr.2d 510, 907 P.2d 358].) Liability under the respondeat superior doctrine does not rely on the employer's fault, and thus "is a departure from the general tort principle that liability is based on fault." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208 [285 Cal.Rptr. 99, 814 P.2d 1341].) Instead, the doctrine imputes liability to the employer for the employee's tortious act that injures a third party. The respondeat superior doctrine rests on three rationales: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Id.* at p. 209.) These rationales derive from a deliberate allocation of the risk, by which losses caused by employees' torts that "are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost

---

[1] Workers' compensation cases "can be helpful" in determining an employer's vicarious liability for its employee's torts. (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 967, fn. 2 [227 Cal.Rptr. 106, 719 P.2d 676].) For example, a " 'going and coming' " exception exists in both the workers' compensation law and under the respondeat superior doctrine. (See, e.g., *Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 961–962 [88 Cal.Rptr. 188, 471 P.2d 988], citing *Kobe v. Industrial Acc. Com.* (1950) 35 Cal.2d 33 [215 P.2d 736].) Workers' compensation cases, however, "are not controlling precedent 'when liability is predicated upon respondeat superior principles.' " (*Perez v. Van Groningen & Sons, Inc., supra,* at p. 967, fn. 2; see also *Harris v. Oro-Dam Constructors* (1969) 269 Cal.App.2d 911, 914 [75 Cal.Rptr. 544].)

of doing business." (*Hinman v. Westinghouse Elec. Co., supra,* 2 Cal.3d at pp. 959–960.) The respondeat superior doctrine is also "based on a ' "deeply rooted sentiment" ' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities." (*Mary M. v. City of Los Angeles, supra,* at p. 208.)

The respondeat superior doctrine, however, applies only if the plaintiff can prove that the employee committed the tortious conduct "within the scope of employment." (*Mary M. v. City of Los Angeles, supra,* 54 Cal.3d at p. 209.)

"[T]he determining factor in ascertaining whether an employee's act falls within the scope of his employment for respondeat superior liability is not whether the act was authorized by the employer, benefited the employer, or was performed specifically for the purpose of fulfilling the employee's job responsibilities. [Citation.] Rather, the question is whether the risk of such an act is typical of or broadly incidental to the employer's enterprise." (*Yamaguchi v. Harnsmut* (2003) 106 Cal.App.4th 472, 481–482 [130 Cal.Rptr.2d 706].) "The employee's activities must be inherent in, typical of or created by the work so that it is a foreseeable risk of the particular employment. [Citations.] Whether the tort occurred within the scope of employment is a question of fact, unless the facts are undisputed." (*Tognazzini v. San Luis Coastal Unified School Dist.* (2001) 86 Cal.App.4th 1053, 1057 [103 Cal.Rptr.2d 790].)

B. *Workers' Compensation Law*

In the workers' compensation system, to be compensable, Labor Code section 3600, subdivision (a) requires an injury to arise out of and be in the course of the employment. (*LaTourette v. Workers' Comp. Appeals Bd.* (1998) 17 Cal.4th 644, 650–651 [72 Cal.Rptr.2d 217, 951 P.2d 1184].) This requirement has two parts. First, "for an injury to 'arise out of the employment,' it must 'occur by reason of a condition or incident of [the] employment . . . .' [Citation:] That is, the employment and the injury must be linked in some causal fashion." (*Maher v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 729, 733–734 [190 Cal.Rptr. 904, 661 P.2d 1058].) Second, "the injury must occur 'in the course of the employment.' This concept 'ordinarily refers to the time, place, and circumstances under which the injury occurs.' [Citation.] Thus ' "[a]n employee is in the 'course of his employment' when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do." ' [Citation.] . . . [A]n employee acts within the course of his employment when ' "performing a duty imposed upon him by his employer and one necessary to perform before the terms of the contract [are] mutually satisfied." [Citation.]' " (*Id.* at p. 733.)

■ Labor Code section 3202 requires liberal construction of workers' compensation statutes "with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

C. *The Workers' Compensation "Commercial Traveler Rule" Does Not Apply*

■ Plaintiffs argue that the "commercial traveler rule" applies in this appeal. The "commercial traveler rule" states: " 'As a general rule a commercial traveler is regarded as acting within the course of his employment during the entire period of his travel upon his employer's business. His acts in traveling, procuring food and shelter are all incidents of the employment, and where injuries are sustained during the course of such activities, the Workmen's Compensation Act applies.' " (*Wiseman v. Industrial Acc. Com.* (1956) 46 Cal.2d 570, 572 [297 P.2d 649].)

Plaintiffs provide only workers' compensation cases applying this rule. Plaintiffs ask this court to borrow the commercial traveler rule from workers' compensation law and apply it to create respondeat superior tort liability in this case. We conclude that the commercial traveler rule and plaintiffs' cases applying that rule have no application to the respondeat superior doctrine.

As we have stated, the "scope of employment" requirement of the respondeat superior doctrine is not identical to the " ' "arising out of and in the course of employment" ' " test of workers' compensation law. (*Perez v. Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 967, fn. 2.) The two systems differ in many ways. "Workers' compensation and respondeat superior law are driven in opposite directions based on differing policy considerations. Workers' compensation has been defined as a type of social insurance designed to protect employees from occupational hazards, while respondeat superior imputes liability to an employer based on an employee's fault because of the special relationship. [Citation.] Further, courts heed statutory admonitions for a liberal construction favoring coverage in workers' compensation cases which are not present in respondeat superior law." (*Blackman v. Great American First Savings Bank* (1991) 233 Cal.App.3d 598, 605 [284 Cal.Rptr. 491].)

Most importantly, the workers' compensation system and the respondeat superior doctrine differ in their effect. Workers' compensation compensates injury *to an employee* "arising out of and in the course of the employment," without regard to fault of the worker, employer, or third party, as long as the "conditions of compensation concur." (Lab. Code, § 3600, subd. (a).) The respondeat superior doctrine, by contrast, imputes liability to an employer for an injury caused *by an employee* to a third party, i.e., to a plaintiff who is

external to the employer-employee relationship. Viewed in light of this difference, the commercial traveler rule of workers' compensation does not support making LMASCC vicariously liable for torts Mazloom is alleged to have committed against plaintiffs. The commercial traveler rule results from the liberal construction of the workers' compensation statutes to extend benefits to protect injured employees. It provides no basis for imputing employee tort liability to an employer who is not at fault.

We reject plaintiffs' theory that the "commercial traveler rule" of workers' compensation law applies to this case. Using the correct theory of respondeat superior, the undisputed facts show that Mazloom's presence and conduct at the time of the alleged tort were outside the scope of his employment.

> D. *Mazloom's Activity When the Collision with Plaintiffs' Vehicle Occurred Was Not Within the Scope of His Employment, Precluding Application of the Respondeat Superior Doctrine*

Where an employee's activity does not come within the scope of employment, it is not part of the special employer-employee relationship. If an employee's act is purely personal, it is not "typical of or broadly incidental to the employer's enterprise." (*Yamaguchi v. Harnsmut, supra*, 106 Cal.App.4th at p. 482.) If the main purpose of the injury-producing activity "was the pursuit of the employee's personal ends, the employer is not liable." (*Le Elder v. Rice* (1994) 21 Cal.App.4th 1604, 1607 [26 Cal.Rptr.2d 749]; see also *Harris v. Oro-Dam Constructors, supra*, 269 Cal.App.2d at p. 916.) In this circumstance the purely personal nature of the tort-producing activity removes it from the "scope of employment," leaving no basis for imputing liability to an employer who is without fault.

It is undisputed that on the day the accident occurred, Mazloom cleared out his office, finished work in the middle of the day, and left Edwards Air Force Base to go to his apartment, where he spent the afternoon packing and closing the apartment. He then drove to visit his father-in-law at his home. After his visit, Mazloom, driving a vehicle he owned, stopped at a fast food restaurant to buy food to take back to his apartment. The collision with plaintiffs' vehicle occurred at the fast-food restaurant. At that time the purpose of Mazloom's driving and activity was personal in nature and was not related to his employment or to his employer. Because he was not acting within the scope of his employment when the accident occurred, Mazloom's activity cannot form the basis for vicariously imposing liability on LMASSC.

Plaintiffs opposed the summary judgment motion by citing facts that LMASSC paid Mazloom an additional 10 percent above his salary during his Edwards Air Force Base assignment and a per diem amount for housing and

incidental expenses (which included transportation). Thus plaintiffs argued that LMASSC paid for Mazloom's transportation costs to the fast-food restaurant where the collision with plaintiffs' vehicle occurred. The payment of a travel allowance, however, "does not reflect a sufficient benefit to defendant [employer] so that it should bear responsibility for [a] plaintiff's injuries." (*Caldwell v. A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1042 [222 Cal.Rptr. 494]; see also *Anderson v. Pacific Gas & Electric Co.* (1993) 14 Cal.App.4th 254, 258–260 [17 Cal.Rptr.2d 534], and *Harris v. Oro-Dam Constructors, supra,* 269 Cal.App.2d at p. 917.) The benefit of an employee's activity to the employer's enterprise, and the employer's right to control that activity, are relevant factors in determining whether the activity comes within the scope of employment. (*Id.* p. 915.) Mazloom performed no services for LMASSC after leaving the workplace about midday, and drove to the fast-food restaurant for his own benefit. Thus he was neither " 'engaged in the duties which he was employed to perform,' " nor did his acts incidentally or indirectly contribute to the employer's service. (*Id.* at p. 916; see also *Caldwell v. A.R.B., Inc., supra,* at p. 1036.) His visit to the In-N-Out Restaurant was not for the benefit of LMASSC, which exercised no control over Mazloom's choice of transportation generally or over his movements at the time he collided with plaintiffs' vehicle. Despite the per diem payment and the 10 percent added salary, Mazloom was not within the scope of his employment when the accident involving plaintiffs occurred. (See *Le Elder v. Rice, supra,* 21 Cal.App.4th at p. 1609.)

In the trial court, plaintiffs argued that LMASSC should be liable because it required Mazloom to be on call 24 hours a day, seven days a week while assigned to Edwards Air Force Base. Plaintiffs also rely on LMASSC's undisputed fact that pursuant to company practice, a field assignment began the day a field service representative left Georgia to travel to a field assignment location and ended when the field service representative arrived back in Georgia. Notwithstanding these policies, the purpose of Mazloom's trip to the In-N-Out Restaurant to buy food was a purely private and personal activity, "a substantial personal deviation from his employment duties" sufficient to make it unfair to hold LMASSC vicariously liable. (*Le Elder v. Rice, supra,* 21 Cal.App.4th at p. 1608.)

Mazloom's presence at the In-N-Out Restaurant was not activity occurring within the scope of his employment. He went there to buy food, and purchasing food did not create a risk typical of or broadly incidental to his LMASSC employment. Consequently LMASSC should not be held vicariously liable for any injuries Mazloom allegedly caused to plaintiffs. We affirm the grant of summary judgment in favor of LMASSC.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendant Lockheed Martin Aeronautical Systems Support Company.

Klein, P. J., and Croskey, J., concurred.