[No. B212323. Second Dist., Div. Five. Sept. 3, 2009.]

CHUENCHOMPORN JEEWARAT et al., Plaintiffs and Appellants, v. WARNER BROS. ENTERTAINMENT INC., Defendant and Respondent.

428

COUNSEL

Zukor & Nelson, Abram Charles Zukor and Marilyn H. Nelson for Plaintiffs and Appellants.

Wood, Smith, Henning & Berman, Kevin D. Smith, Anne K. McIntyre and Nicholas M. Gedo for Defendant and Respondent.

OPINION

**KRIEGLER, J.**—An employee returning home after a three-day business conference was driving his regular commute route when he was involved in a car accident that injured several pedestrians. Plaintiffs sought to impose liability against the employer based on principles of respondeat superior. The employer filed a motion for summary judgment based on the "going and coming rule," which provides that an employer is not subject to vicarious liability for accidents occurring during an employee's commute to or from the workplace. The trial court granted the motion and entered judgment in favor of the employer. On appeal, plaintiffs contend the business conference was a special errand under the "special errand doctrine," which holds an employer vicariously liable for accidents occurring while an employee is engaged in a special errand for the employer, including the employee's commute to or from the special errand.

We hold that an employee's attendance at an out-of-town business conference may be considered a special errand under the special errand doctrine. In addition, when an employee intends to drive home from the errand, the errand is not concluded simply because the employee drives his regular commute route, but rather, the errand is concluded when the employee returns home or deviates from the errand for personal reasons. Because the employer failed to show that the employee was not acting within the course and scope of his employment at the time of the accident, summary judgment was improperly granted. We reverse.

## FACTS

Marc Brandon worked for Warner Bros. Entertainment Inc. (Warner) as vice-president of anti-piracy Internet operations. Warner did not provide him with a car or gas allowance, and he was not reimbursed for mileage. He typically left his office on a workday between 5:00 p.m. and 6:00 p.m.

In August 2006, he attended a three-day business conference in Sunnyvale, California that was sponsored by one of Warner's anti-piracy vendors. Warner approved Brandon's trip and paid for his airfare, hotel, and airport parking.

On August 11, 2006, Brandon left the conference early and flew back to the Burbank Airport, where he retrieved his car from a satellite parking lot. He did not intend to go to his office, but instead planned to return to his home and take his dogs for a walk. On his way home, he drove around the studio complex where his office was located without stopping and took his normal route home for approximately two to three miles, until he was involved in an automobile collision with Jared Southard. The accident occurred at approximately 4:35 p.m.

One or both cars struck and injured pedestrians Chuenchomporn Jeewarat, Tipphawan Tantisriyanurak and Kanhathai Vutthicharoen. Vutthicharoen died as a result of her injuries.

## PROCEDURAL BACKGROUND

On February 2, 2007, Jeewarat and Tantisriyanurak filed a personal injury action against Brandon and Southard. On July 5, 2007, Jeewarat and Tantisriyanurak filed an amendment to the complaint substituting in Warner as a Doe defendant. An amended complaint was filed which added as plaintiffs Vutthicharoen's parents Anek Vutthicharoen and Kanchana Vutthicharoen, individually and as administrators of their child's estate. The amended complaint alleged causes of action for negligence and wrongful death against Warner.

In May 2008, Warner filed a motion for summary judgment on the grounds that Brandon was commuting from work to home when the accident occurred, and therefore, under the "going and coming rule," Brandon was not acting within the scope of his employment and Warner could not be held vicariously liable. Warner further argued that the "commercial traveler exception," which extends workers' compensation liability to accidents occurring during commercial travel, does not apply in third party tort cases, and the "special errand" doctrine does not apply to cases involving commercial travel. Warner asserted that even if the special errand doctrine applied, any special errand ended when Brandon drove his regular commute route home.

Plaintiffs opposed the motion. They argued that a reasonable inference could be drawn that Brandon was traveling "from work to work" at the time of the accident, because he regularly did work at his home office. As a result, Brandon was acting within the course and scope of his employment and the "going and coming rule" did not apply. Alternatively, plaintiffs argued that the special errand exception to the "going and coming rule" applied, because Brandon had not made any stops and had not yet returned home from the conference at the time of the collision. Thus, Brandon was in the course and scope of his employment for the entire trip until he arrived home.

In its reply, Warner responded that Brandon's work in his home office should not transform his home into a workplace and abrogate the coming and going rule. In addition, Warner argued that the special errand doctrine did not apply to a business trip, and even if it did, Brandon had abandoned any errand for Warner when he resumed his regular commute route home and the "going and coming rule" controlled.

Following a hearing, the trial court denied the motion for summary judgment on the ground that there were triable issues of fact as to whether Brandon was acting within the course and scope of his employment when he drove from the airport to his home, based on the work activities that he regularly conducted from his home office. The trial court did not comment on the applicability of the special errand doctrine.

Warner filed a petition with this court for a writ of mandamus. Warner relied on *Santa Rosa Junior College v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345 [220 Cal.Rptr. 94, 708 P.2d 673] (*Santa Rosa*) to argue that the "going and coming rule" should not be abrogated simply because an employee did work on a home computer at night and on weekends. The writ petition did not refer to the special errand doctrine. On October 2, 2008, based on the analysis in *Santa Rosa*, this court issued an alternative writ ordering the trial court to vacate its order and grant Warner's motion for summary judgment or show cause why a peremptory writ should not issue. That same day, Tantisriyanurak entered into a settlement with all defendants and dismissed her complaint with prejudice. She is not a party to the instant appeal.

The trial court vacated its order denying Warner's motion for summary judgment. On November 13, 2008, the trial court entered an order granting the motion for summary judgment and entering judgment in favor of Warner. Plaintiffs filed a timely appeal.

## DISCUSSION

Plaintiffs contend Warner was not entitled to summary judgment on the ground that the "going and coming rule" precluded vicarious liability for accidents occurring during Brandon's commute to or from work, because the business conference that Brandon attended was a special errand which had not yet concluded at the time of the accident. We agree.

*Standard of Review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter

of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

■ Whether an employee was acting within the course and scope of his employment is generally a question of fact, but if the facts are undisputed and no conflicting inferences are possible, the question is one of law. (*Munyon v. Ole's, Inc.* (1982) 136 Cal.App.3d 697, 701 [186 Cal.Rptr. 424].)

*General Principles of Respondeat Superior*

■ "The doctrine of respondeat superior imposes vicarious liability on an employer for the torts of an employee acting within the scope of his or her employment, whether or not the employer is negligent or has control over the employee. [Citations.] As a matter of policy it is considered fair to allocate to the costs of doing business a loss resulting from a risk that arises in the context of the employment enterprise. [Citation.] ' " '[W]here the question is one of vicarious liability, the inquiry should be whether the risk was one "that may fairly be regarded as typical of or broadly incidental" *to the enterprise undertaken by the employer.* [Citation.]' [Citation.] Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include *risks inherent in or created by the enterprise.*" ' [Citation.]" (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 160 [49 Cal.Rptr.3d 153] (*Baptist*).)

■ "The respondeat superior doctrine is to be given a broad application, as the Supreme Court explained in *Farmers* [*Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992 [47 Cal.Rptr.2d 478, 906 P.2d 440]]. 'For example, "[t]he fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer." [Citation.] Thus, acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal and not acts of service, do not take the employee outside the scope of employment. [Citation.] Moreover, " 'where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which

business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer.' [Citations.]" ' [Citation.]" (*Baptist, supra,* 143 Cal.App.4th at p. 161.)

■ "Although the scope of employment is generally viewed broadly under the respondeat superior doctrine, the Supreme Court made clear in *Farmers* that an employer is not to be held strictly liable for all actions of its employees during working hours. 'Significantly, an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes. [Citations.] Thus, if . . . the misconduct is not an "outgrowth" of the employment [citation], the employee is not acting within the scope of employment. Stated another way, "[i]f an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior." [Citation.] In such cases, the losses do not foreseeably result from the conduct of the employer's enterprise and so are not fairly attributable to the employer as a cost of doing business.' [Citation.]" (*Baptist, supra,* 143 Cal.App.4th at p. 161.)

■ "An essential element of respondeat superior is a causal nexus or reasonable relationship between the duties of employment and the conduct causing injury. '[T]he incident leading to injury must be an "outgrowth" of the employment [citation]; the risk of tortious injury must be " 'inherent in the working environment' " [citation] or " 'typical of or broadly incidental to the enterprise [the employer] has undertaken.' " ' [Citation.] A related approach is to ask 'whether the tort was, in a general way, foreseeable from the employee's duties. Respondeat superior liability should apply only to the types of injuries that " 'as a practical matter are sure to occur in the conduct of the employer's enterprise.' " ' [Citation.]" (*Baptist, supra,* 143 Cal.App.4th at p. 161.)

■ "An offshoot of the doctrine of respondeat superior is the so-called 'going and coming rule.' Under this rule, an employee is not regarded as acting within the scope of employment while going to or coming from the workplace. [Citation.] This is based on the concept that the employment relationship is suspended from the time the employee leaves work until he or she returns, since the employee is not ordinarily rendering services to the employer while traveling. [Citations.]" (*Baptist, supra,* 143 Cal.App.4th at p. 162.)

However, "exceptions will be made to the 'going and coming' rule where the trip involves an incidental ˙benefit to the employer, not common to

commute trips by ordinary members of the work force." (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962 [88 Cal.Rptr. 188, 471 P.2d 988].) When an employee is engaged in a "special errand" or a "special mission" for the employer it will negate the "going and coming rule." (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 722 [159 Cal.Rptr. 835, 602 P.2d 755]; *Trejo v. Maciel* (1966) 239 Cal.App.2d 487, 495 [48 Cal.Rptr. 765]; *Sullivan v. Thompson* (1939) 30 Cal.App.2d 675, 677–678 [87 P.2d 62].) An employee " 'coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer . . . is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons.' " (*Felix v. Asai* (1987) 192 Cal.App.3d 926, 931 [237 Cal.Rptr. 718], quoting *Boynton v. McKales* (1956) 139 Cal.App.2d 777, 789 [294 P.2d 733]; see also *Trejo v. Maciel, supra,* at p. 495 [when on a special errand the employee is in the course and scope of employment for the entire trip; it does not cease after the task has been accomplished].) The employer is "liable for torts committed by its employee while traveling to accomplish a special errand because the errand benefits the employer. [Citation.]" (*Tognazzini v. San Luis Coastal Unified School Dist.* (2001) 86 Cal.App.4th 1053, 1057 [103 Cal.Rptr.2d 790].)

■ "One [example of the special errand exception] would be where an employee goes on a business errand for his employer leaving from his workplace and returning to his workplace. Generally, the employee is acting within the scope of his employment while traveling to the location of the errand and returning to his place of work. [Citation.] The exception also may be applicable to the employee who is called to work to perform a special task for the employer at an irregular time. The employee is within the scope of his employment during the entire trip from his home to work and back to his home. [Citation.] The exception is further applicable where the employer asks an employee to perform a special errand after the employee leaves work but before going home. In this case, as in the other examples, the employee is normally within the scope of his employment while traveling to the special errand and while traveling home from the special errand. [Citations.]" (*Felix v. Asai, supra,* 192 Cal.App.3d at pp. 931–932.)

*Business Trip May Be a Special Errand*

■ Plaintiffs contend an employee's attendance at an out-of-town business conference authorized and paid for by the employer may be a special errand for the benefit of the employer under the special errand doctrine. Warner asserts that the special errand doctrine does not apply to commercial travel. We conclude that a special errand may include commercial travel such as the business trip in this case.

The evidence that Warner paid for Brandon's airfare, hotel accommodations, and airport parking leads to a reasonable inference that Warner expected to derive a benefit from Brandon's attendance at the conference. The conference was led by an anti-piracy vendor which Warner utilized. It is reasonable to infer that Brandon would use the information he learned at the conference in his position as vice-president of Warner's anti-piracy Internet operations.

In *Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 284 [38 Cal.Rptr.3d 845], the appellate court assumed that a business trip could be a special errand. The defendant's employee was driving to the airport for a business trip when he forced a car off the road, injuring the plaintiffs. The jury returned a verdict in favor of the defendant and the plaintiffs appealed, contending that the employee was in the course and scope of his employment as a matter of law. (*Ibid.*) The court stated that "[p]rior to the incident with plaintiffs, [the employee] left his home to do errands, to meet his family for dinner, and then to go to the airport for his business trip. He did not intend to return home before going to the airport, and when he got onto Interstate 205, [he] was on the same route that he would have taken had he been going straight to the airport. In this sense, the place in which the incident occurred was consistent with his being on a special errand business trip." (*Id.* at p. 294.) However, the court concluded that based on the evidence, the jury reasonably could find the employee's conduct at the time of this incident was motivated entirely by personal malice and did not occur within the course and scope of his employment. (*Ibid.*)

Warner makes a meritless argument to defeat liability based on workers' compensation law. Under workers' compensation law, "the commercial traveler's doctrine" is an exception to the going and coming rule which provides that an employee whose work entails travel away from the employer's premises is within the course and scope of employment continuously during the trip. (*IBM Corp. v. Workers' Comp. Appeals Bd.* (1978) 77 Cal.App.3d 279, 282 [142 Cal.Rptr. 543].) However, in *Sunderland v. Lockheed Martin Aeronautical Systems Support Co.* (2005) 130 Cal.App.4th 1, 8 [29 Cal.Rptr.3d 665] (*Sunderland*), the appellate court held that the commercial traveler's doctrine does not apply to third party tort cases, and therefore, the employer in that case could not be held vicariously liable for a tort that occurred on a business trip when the employee was not acting within the course and scope of his employment. In essence, Warner contends the holding that an employee is not continuously within the course and scope of employment during a business trip for purposes of tort liability precludes application of the special errand doctrine, and therefore, the going and coming rule applies in this case. This is incorrect.

In *Sunderland,* an employee was relocated to California for an assignment of several months. (*Sunderland, supra,* 130 Cal.App.4th at p. 6.) Upon learning that his trip was being shortened, he left his apartment and drove to say goodbye to his father-in-law. After leaving his father-in-law's residence, the employee entered a fast-food drive-through lane to get dinner before heading back to his apartment, but collided with the rear of the plaintiff's vehicle. (*Ibid.*) The plaintiff argued that the commercial traveler rule should be applied to expand the definition of the scope of the employment required for respondeat superior liability, but the appellate court held that "[n]o authority supports application of the commercial traveler rule to create respondeat superior liability." (*Id.* at p. 8.)

The *Sunderland* court held only that the commercial traveler's doctrine does not apply in the context of third party torts to impose liability on employers for torts committed by employees on business trips regardless of whether the employee is acting within the course and scope of employment at the time of the accident. The court did not consider whether the traditional tort doctrine concerning special errands applied to business travel. Moreover, it is clear that the employer in *Sunderland* was not vicariously liable under the special errand doctrine, because the employee was engaged in a purely personal activity at the time of the accident and not acting within the course and scope of his employment. The holding in *Sunderland* has no bearing on whether the special errand doctrine applies in tort cases involving business travel.

*Commute Route*

Warner contends that even if Brandon's business trip could be considered a special errand, the errand concluded when Brandon drove past his office and resumed his regular commute route at approximately his usual time. We disagree.

The undisputed evidence was that at the time of the accident, Brandon was traveling from the airport to his home, with no intention of going to his office. Brandon's route from the airport coincidentally passed his office, which happened to be on his return route home. As stated above, a special errand continues for the entirety of the trip. It would be nonsensical to base the employer's liability on whether the employee coincidentally chose a route that passed the workplace. Brandon intended to return to his home, and there were no intervening personal deviations to remove him from the course and scope of employment. Therefore, the special errand continued until such time as he arrived at his destination.

Based on our holding that the special errand doctrine may be applied to the business trip in this case, we conclude Warner failed to show there

were no triable issues of material fact as to whether Brandon was acting within the course and scope of his employment at the time of the accident. We need not address plaintiffs' additional argument that there is a triable issue of fact as to whether Brandon was traveling from work to work, based on his use of his home as an office. Warner's motion for summary judgment must be denied.

## DISPOSITION

The order granting summary judgment and entering judgment in favor of Warner is reversed. The trial court is directed to enter a new and different order denying the motion for summary judgment. Appellants Anek Vutthicharoen, Kanchana Vutthicharoen, and Chuenchomporn Jeewarat are awarded their costs on appeal.

Turner, P. J., and Mosk, J., concurred.