# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD A. SHARROCK; CHRISTINA
M. SHARROCK,
       *Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,
       *Defendant-Appellee.*

No. 10-16425

D.C. No.
1:08-cv-00013

OPINION

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge, Presiding

Submitted February 15, 2012*
Honolulu, Hawaii

Filed March 14, 2012

Before: Alfred T. Goodwin, Stephen S. Trott, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Goodwin

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Wayson W.S. Wong, Hagatna, Guam, for the plaintiffs-appellants.

Anne Murphy, Civil Division, Department of Justice, Washington, D.C., for the defendant-appellee.

## OPINION

GOODWIN, Circuit Judge:

Plaintiff Richard Sharrock was injured when the automobile in which he was traveling on Route 1, Naval Base, Guam, collided with an automobile owned and driven by Quinten

McCoy, an off-duty sailor whose negligence was conceded. Sharrock and his wife, Christina, (the "Sharrocks") brought suit against the United States on a theory of *respondeat superior*. The district court granted summary judgment for the government, and the Sharrocks appeal. The district court held that McCoy "was not acting in the course and scope of his employment, was not going about the business of his employer, and was not therefore acting in the line of duty." We review *de novo*, and we affirm.

## I.   *Facts and Proceedings Below*

Gunner's Mate McCoy, at noon on the day of the accident, was given the rest of the day off. At the time of the accident, he was driving, in his own car, to a basketball practice at a facility furnished by the Navy as part of its Morale, Welfare & Recreation ("MWR") Program. In Guam, McCoy was assigned to the crew of the U.S.S. Frank Cable. McCoy's shipmates were planning to participate in a "Captain's Cup" basketball tournament scheduled to take place about two weeks after the date of the accident. The record does not reveal whether the ship's captain was the sponsor of the Captain's Cup tournament.

The MWR Program was directed by a paid staff person whose deposition established that the Captain's Cup sports program also included volleyball, softball, flag football, and soccer. The MWR program also included less strenuous recreation like motion pictures, guitar lessons, billiards, and card games. Commanding officers encouraged, but did not require, participation in MWR activities. Physical exercise sessions, on the other hand, were a mandatory part of McCoy's general military duties, and were scheduled during on-duty time with participants required to wear appropriate uniforms.

The district court had before it the above undisputed facts, among others, and was faced with the problem of deciding whether, on those facts, McCoy's negligence occurred while

he was acting within the scope of his employment, as California courts frame the question, or "in the line of duty" as the Federal Tort Claims Act ("FTCA") frames the question. We have held that both characterizations have the same meaning where the employee is a member of the military. *Lutz v. United States*, 685 F.2d 1178, 1182 (9th Cir. 1982).

II. *Law and Analysis*

We review a grant of summary judgment *de novo. See Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). Because the facts of the accident are undisputed, the scope of employment issue here is suitable for determination as a matter of law. *See id.*; *see also Washington v. United States*, 868 F.2d 332, 333-34 (9th Cir. 1989).

**[1]** Scope of employment for FTCA purposes extends liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see generally Hartzell v. United States*, 786 F.2d 964, 966 (9th Cir. 1986). We apply California law because of the dearth of Guam case law on point, and because Guam's doctrine of *respondeat superior*, codified in 18 Guam Code Ann. § 20309, is identical to California Civil Code § 2338. *See Sumitomo Constr. Co., Ltd. v. Zhong Ye, Inc.*, 1997 Guam 8; 1997 WL 471506, at *2 (Guam 1997) ("[W]hen a legislature adopts a statute which is identical or similar to one in effect in another jurisdiction, it is presumed that the adopting jurisdiction applies the construction placed on the statute by the originating jurisdiction."); *see also Fajardo v. Liberty House Guam*, 2000 Guam 4; 2000 WL 38719, at *4-5 (Guam 2000) (applying California case law where the Guam statute mirrored a California statute and "there is no compelling reason to deviate from [California's] interpretation of th[e] statute[ ].").

**[2]** The "going and coming rule" generally precludes an employer's liability for the torts of an employee committed

during the employee's commute to and from work. *See Sprin-kles v. Assoc. Indem. Corp.*, 188 Cal. App. 4th 69, 79 n.4 (2010). The Sharrocks invoke the special errand exception to this rule, however, which provides for *respondeat superior* liability where the employee is commuting to or from work on a special errand either as part of his regular duties or at the order or request of his employer. *See Jeewarat v. Warner Bros. Entm't, Inc.*, 177 Cal. App. 4th 427, 436 (2009).

Ultimately, the whole bundle of facts must be considered in deciding whether McCoy's errand involved a risk to the traveling public that "may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer." *See Jeewarat*, 177 Cal. App. 4th at 434 (internal quotation marks and emphasis omitted). To determine this inherent risk, courts ask whether the accident was a foreseeable consequence of the employment. *Farmers Ins. Group v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1004 (1995). Foreseeability in this context amounts to whether "an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id.* at 1004.

On one hand, under California law, the scope of employment for *respondeat superior* purposes has been interpreted broadly. *See id.* California courts have extended *respondeat superior* liability in a variety of circumstances, such as in an accident occurring after a company banquet, *Boynton v. McKales*, 139 Cal. App. 2d 777, 789 (1956); an accident occurring after an office Christmas party, *Harris v. Trojan Fireworks Co.*, 120 Cal. App. 3d 157, 164 (1981); an after-hours fight on company property, *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 624 (1975); and in numerous workers' compensation cases, *see, e.g.*, *Dimmig v. Workmen's Comp. Appeals Bd.*, 6 Cal. 3d 860, 869 (1972) (employee returning home from night school classes).

On the other hand, courts applying California law have refused to find *respondeat superior* liability for injuries sus-

tained under comparable circumstances. *See Chapin v. United States*, 258 F.2d 465, 470-71 (9th Cir. 1958) (service member driving between permanent duty stations); *Concepcion v. United States*, 374 F. Supp. 1391, 1394-95 (D. Guam 1974) (service member driving on base after being released from duty for the day); *Blackman v. Great Am. First Sav. Bank*, 233 Cal. App. 3d 598, 605 (1991) (employee driving to night school from work); *Robbins v. Hewlett-Packard Corp.*, 26 Cal. App. 3d 489, 495 (1972) (employee attending company picnic). In finding no *respondeat superior* liability here, the district court applied local precedent as stated in *Concepcion*.

The disparate outcomes described above reflect the underlying difficulty in defining the contours of *respondeat superior* liability in close cases, as here. Thus, it is helpful to rule out authority that rests on non-analogous grounds. *Cf. Farmers*, 11 Cal. 4th at 1005 ("To aid us in our application of these principles, we find it helpful to compare the types of situations in which the respondeat superior doctrine has and has not been applied.").

A subset of California *respondeat superior* cases in our circuit have involved service members whose negligent driving was the direct consequence of voluntary intoxication. *See, e.g.*, *Doggett v. United States,* 875 F.2d 684 (9th Cir. 1989), *abrogated by United States v. Olson*, 546 U.S. 43 (2005). Along these lines, the Second Circuit, applying California law, broadly extended liability in holding that damage caused by a drunk-driving service member in Guam was a foreseeable risk of military base operations. *See Taber v. Maine*, 67 F.3d 1029, 1036-37 (1995). *Taber* has been cited by this circuit, however, only for its detailed analysis of the *Feres* doctrine which bars servicemembers' FTCA claims for injuries sustained during the course of military service. *See id.* at 1037-53; *see also Costco v. United States*, 248 F.3d 863, 866-67, 869 (9th Cir. 2001); *Dreier v. United States*, 106 F.3d 844, 850 n.6 (9th Cir. 1996). The *Feres* doctrine was not raised by the parties and is not at issue in this case. Moreover,

the military branches have specific regulations dealing with personnel who become intoxicated and thereafter become involved in automobile accidents. These circumstances have their own unique questions of rights and duties, and there is no occasion here to expand upon what has been written in military personnel drunk-driving cases.

Similarly, we decline to base our consideration on the workers' compensation cases in which scope of employment is broadly interpreted in order to carry out the legislative policy of providing medical care and replacement of wages lost due to injuries from industrial accidents. *See, e.g.*, *Munyon v. Ole's Inc.*, 136 Cal. App. 3d 697, 702-03 (1982) ("An employee can suffer an injury that is compensable under workers' compensation laws and at the same time not be within the scope of employment under the doctrine of respondeat superior."). Although the inquiry is related and workers' compensation cases may be persuasive in certain circumstances, they are not controlling and do not aid our analysis here.

[3] On the facts of this case, we are required to determine whether the Navy created and maintained an environment which made McCoy's conduct at the time and place of the accident reasonably foreseeable. *See Jeewarat*, 177 Cal. App. 4th at 435. The Sharrocks contend that the special errand exception applies because McCoy was "requested" to attend the MWR program. In support of this argument, the Sharrocks point to the deposition testimony of McCoy's supervising officer that participation in the basketball tournament related to McCoy's general duties as a sailor and McCoy's testimony that the Navy stressed the virtues of physical fitness. The Sharrocks further cite Department of Defense Instructions that require the United States military to create MWR programs. The Sharrocks believe that these facts give rise to a clear inference that the Navy requested and encouraged McCoy to participate in the MWR program. However, these facts are

inadequate to establish that McCoy was acting in the scope of his employment at the time of the accident.

**[4]** The Department of Defense Instructions mandate only the creation of MWR programs, not servicemember attendance at such programs. *See* Dep't of Def., Instruction No. 1015.10 (Nov. 3, 1995) (as amended through Change 2, Oct. 31, 2007). Moreover, even if the Navy encouraged McCoy to participate in MWR programs, the record does not reflect any evidence that the Navy "required" or "ordered" him to do so. To the contrary, by all accounts McCoy's MWR participation was voluntary. McCoy himself stated that his participation in the Captain's Cup program was not required.

**[5]** The facts of this case thus appear most closely analogous to *Blackman v. Great American First Savings Bank*, 284 Cal. App. 3d 598 (1991). In *Blackman*, the court affirmed summary judgment for the employer where the employee injured the plaintiff in a car accident on the way to night classes at a local university. The court held that the accident was not a special errand within the scope of employment where the employee's classroom attendance was not part of her regular duties and was encouraged but not required. *Id.* at 602-03. Although the employer paid for the classes and the employee's classwork did accrue to the employer's benefit over time, the court held that attendance at the classes was not a special errand because any benefit to the employer was "broadly collateral" and had "no direct impact" on the employer's daily operations. *Id.* at 604. Similarly here, the Navy's support of MWR programs and any incidental benefit to the Navy from service members' participation therein, does not make McCoy's attendance at the basketball practice comparable to a special errand. To endorse government liability for the Sharrocks' injuries in this instance would exceed the permissible scope of that exception.

In sum, the Sharrocks' theory of liability, as the district court correctly noted, would impose upon the military a bur-

den far broader than that imposed upon any private employer, and in excess of the limited waiver contemplated by the FTCA. *See Lutz v. United States*, 685 F.2d 1178, 1183 (9th Cir. 1982). We have, in several cases, resisted subjecting the military to expansive *respondeat superior* liability. *See Clamor v. United States*, 240 F.3d 1215, 1217 (9th Cir. 2001) (no *respondeat superior* liability where Navy civilian employee "was not engaged in any errand for his employer, but was leaving work and free to do whatever he wished"); *Hartzell v. United States*, 786 F.2d 964, 967 (9th Cir. 1986) (fact that servicemember's travel "was in some part intended to serve the Air Force . . . is not sufficient to bring her within the scope of employment"); *Chapin v. United States*, 258 F.2d 465, 468 (9th Cir. 1958) (military's unique authority over servicemembers is insufficient to extend liability beyond that of a private employer).

III.   *Conclusion*

**[6]** We conclude that a servicemember en route to participation in a recreational activity, where participation is encouraged by the Navy but not required, is not acting in the line of duty.

AFFIRMED.