[No. F063128. Fifth Dist. Sept. 20, 2012.]

KENNETH FIELDS, Plaintiff and Appellant, v.
STATE OF CALIFORNIA, Defendant and Respondent.

1392

**COUNSEL**

Miles, Sears & Eanni and Douglas Gordon for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Steven M. Gevercer, Peter A. Meshot and James W. Walter, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**THE COURT.**[*]—

## INTRODUCTION

This case arose from a two-vehicle automobile accident involving Linda Gadbois and Kenneth Fields. As a result of the accident, Gadbois died and Fields suffered severe injuries. Fields filed a personal injury action against Gadbois's estate and the State of California (State), Gadbois's employer. Fields contended that Gadbois was acting within the scope of her employment as an employee of the State at the time of the accident. Following presentation of Fields's case, the court entered a nonsuit in favor of the State.[1] Fields appeals from the judgment of nonsuit. We affirm.

## FACTS

Gadbois worked as a prison cook for Avenal State Prison (ASP). On April 3, 2008, she was injured on the job and sought treatment through her employer's workers' compensation network. Gadbois later exercised her right to see another doctor because she was dissatisfied with her original treating doctor. She asked Rosemary Harvick, the return-to-work coordinator at ASP,

---

[*]Kane, Acting P. J., Detjen, J., and Franson, J.

[1] Fields and Gadbois's estate later settled and the estate is not a party to this appeal.

for a different physician, and Harvick provided her with a list of other doctors from which she chose Central Valley Comprehensive Care (CVCC). An appointment was made for Gadbois at CVCC for May 21, 2008. After attending that appointment, Gadbois scheduled a followup appointment for May 28. Gadbois was scheduled to work on May 28, the day of the accident, but received permission to take time off to go to a followup appointment with CVCC. Gadbois went from her home to her appointment. After meeting with her doctor at CVCC, Gadbois telephoned her supervisor at ASP and told her that she was on her way to work at the prison. The accident occurred shortly thereafter.

According to Harvick, employees injured on the job are required to accept the workers' compensation medical treatment offered by the State. If the employee misses a day of work due to a workers' compensation appointment, annual leave is deducted. Thereafter, the State Compensation Insurance Fund may reimburse the employee for that appointment, restoring annual leave hours.

Gadbois was paid for the day of her death pursuant to a prison death benefit policy that provides if an employee dies on a regular work day, whether at work, on the way to work, or on paid vacation or leave, the employee will be compensated without using leave credits. Gadbois received her full salary for the day of the accident and was not paid from workers' compensation or annual leave funds.

Gadbois was not driving a State-owned vehicle at the time of the accident. ASP did not require Gadbois to drive her own vehicle to work, and none of her duties as a cook required her to drive a vehicle. She was not conducting State business prior to her trip to her medical appointment or her commute to work on the day of the accident.

Following presentation of Fields's case, the State moved for nonsuit claiming Gadbois was not acting within the scope of her employment at the time of the accident. The trial court granted the motion.

## DISCUSSION

Fields asserts the State is liable under a respondeat superior theory. In particular, he claims Gadbois was acting within the scope of her employment when the accident occurred because she was driving to work from her medical appointment related to her workers' compensation claim. We disagree.

█ We review the grant of a motion for nonsuit de novo using the same standard as the trial court. (*Mejia v. Community Hospital of San Bernardino*

(2002) 99 Cal.App.4th 1448, 1458 [122 Cal.Rptr.2d 233] (*Mejia*).) " ' "A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor." [Citation.] In determining the sufficiency of the evidence, the trial court must not weigh the evidence or consider the credibility of the witnesses. Instead, it must interpret all of the evidence most favorably to the plaintiff's case and most strongly against the defendant, and must resolve all presumptions, inferences, conflicts, and doubts in favor of the plaintiff. If the plaintiff's claim is not supported by substantial evidence, then the defendant is entitled to a judgment as a matter of law, justifying the nonsuit.' [Citation.]" (*Mejia, supra,* 99 Cal.App.4th at p. 1458.)

■ "Under the theory of respondeat superior, an employer is vicariously liable for an employee's torts committed within the scope of employment." (*Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, 1558 [56 Cal.Rptr.2d 333] (*Bailey*).) Generally, whether a tort was committed within the scope of employment is a question of fact. (*Ibid.*) " '[T]he incident leading to injury must be an "outgrowth" of the employment . . . ; the risk of tortious injury must be . . . " 'typical of or broadly incidental to the enterprise [the employer] has undertaken.' " . . .' [Citation.]" (*Id.* at p. 1560.) Whether an employee acted within the scope of employment becomes a question of law if the facts are undisputed. (*Id.* at p. 1558.)

■ An employee is outside the scope of employment while engaged in the ordinary commute to and from the workplace under the "going-and-coming rule." (*Blackman v. Great American First Savings Bank* (1991) 233 Cal.App.3d 598 [284 Cal.Rptr. 491] (*Blackman*).) "Exceptions are made to the going-and-coming rule when the employee's trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force. [Citation.]" (*Id.* at p. 602.) Payment for travel time and expenses, or travel to accomplish a special errand at the request of the employer may indicate such a benefit. (*Tognazzini v. San Luis Coastal Unified School Dist.* (2001) 86 Cal.App.4th 1053, 1057 [103 Cal.Rptr.2d 790] (*Tognazzini*); *Caldwell v. A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1035 [222 Cal.Rptr.494] (*Caldwell*).) Relying on *Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956 [88 Cal.Rptr. 188, 471 P.2d 988] (*Hinman*), Fields asserts that the State's payment to Gadbois of her salary for the day of her death evidences that Gadbois was acting within the scope of employment when the accident occurred. The court in *Hinman* stated: ■ "[A]lthough the employment relationship is ordinarily suspended when the employee is going or coming, 'the employer may agree, either expressly or impliedly, that the relationship shall continue during the period of "going and coming," in which case the employee is entitled to the protection of the act during that period . . . . [S]uch an agreement may also be inferred from the fact that the

employer compensates the employee for the time consumed in traveling to and from work.' [Citation.]" (*Hinman, supra,* 2 Cal.3d at pp. 961–962, fn. omitted.)

We are not persuaded by Fields's attempt to analogize Gadbois's death benefit payment with reimbursement for travel expenses.

The court in *Hinman* held the employer liable for the plaintiff's injuries caused by its employee because the employer paid its employees for their time spent commuting to and from work. (*Hinman, supra,* 2 Cal.3d at pp. 961–962.) *Hinman* applied the exception to the going-and-coming rule because the employer gained a substantial benefit where it was permitted to enlarge the available labor market by providing travel expenses and payment for travel time. (*Id.* at p. 962.)

*Hinman*'s rationale is inapposite to the facts here. While the employer in *Hinman* expanded its labor market by paying for travel time, the State's policy to pay a deceased employee for the day of her death, provided it was a work day, does not provide a comparable benefit to the employer. Gadbois was paid her regular salary and was on her way to work when she died, but she would have also been paid if she had died in a car accident while on paid vacation or leave. The payment was unrelated to her travel and her work duties. "The fact she was being paid . . . , in and of itself, is not enough to place her trip within the scope of employment." (*Bailey, supra,* 48 Cal.App.4th at p. 1565.)

■ While respondeat superior liability does not generally require an employee's actions benefit her employer, courts have required injured plaintiffs to show some benefit to the employer when invoking an exception to the "going-and-coming rule." (See *Bailey, supra,* 48 Cal.App.4th at p. 1562 [respondeat superior not applied to employer where employee injured third party in car accident while on a paid break]; *Caldwell, supra,* 176 Cal.App.3d at pp. 1033, 1038–1039 [employer not held liable for plaintiff's injuries from car accident caused by employee where all employees were paid travel allowance whether or not they actually drove their car to work]; *Anderson v. Pacific Gas & Electric Co.* (1993) 14 Cal.App.4th 254, 261 [17 Cal.Rptr.2d 534] (*Anderson*) [employer did not receive a sufficient benefit from the payment of a travel allowance so as to impose liability for plaintiff's injuries caused by employee in car accident].) Fields fails to adequately explain how the State's payment to Gadbois for the day of her death benefits the State so as to invoke the exception to the "going-and-coming rule."

■ Fields also asserts Gadbois was within the scope of employment because she was on a special errand. "The special errand doctrine is an

exception to the going-and-coming rule which states an employee is within the scope of his employment while coming from home or returning to it while on a special errand either as part of his regular duties or at a specific order or request of his employer. [Citation.]" (*Blackman, supra,* 233 Cal.App.3d at p. 602.)

In *Tognazzini,* the Second District Court of Appeal held the special errand exception did not apply where a classroom tutor, newly hired by the defendant school district, injured the plaintiff in a car accident. (*Tognazzini, supra,* 86 Cal.App.4th 1053.) The accident occurred as the tutor was leaving a fingerprinting appointment mandated by the state to work with children in the classroom. The employee scheduled the appointment herself, and the district did not require her to drive a car. (*Id.* at p. 1056.) The court explained the employee was not on a special errand because the employer never specified where, when or how to get the fingerprints. (*Id.* at p. 1059.) Further, the court noted specifically that fingerprinting was not a requirement mandated by the employer, but a state requirement for contact with children in schools. (*Ibid.*) The court held that the employer should not be held accountable for the employee's conduct while complying with the state mandate. (*Id.* at p. 1060.)

The facts here are similar to those in *Tognazzini.* ASP did not order Gadbois to schedule an appointment with CVCC on May 28, 2008. While Fields correctly notes that Gadbois was required to go to workers' compensation medical appointments under Labor Code sections 4050 and 4053, the appointments were a requirement to receive compensation for her industrial injury, not a condition of her employment. The appointments did not pertain to her duties as a prison cook and were not made at the request of the State. Thus, Gadbois was not on a special errand putting her within the scope of employment.

Fields cites *Laines v. Workmen's Comp. Appeals Bd.* (1975) 48 Cal.App.3d 872 [122 Cal.Rptr. 139] (*Laines*) in arguing that the special errand exception applies. In *Laines,* the employee was driving his motorcycle to keep a medical appointment related to an earlier industrial injury when he was hit by a truck. The issue was whether the employee's injury arose out of and in the course of his employment, thereby qualifying him for workers' compensation benefits. The court held that the injury was work related because the employer had a statutory duty to furnish medical treatment and the employee a statutory duty to submit to medical examination and treatment for the previous industrial injury. (*Id.* at p. 877.) Although the court in *Laines* held that the further injury occurred in the course of employment, the court also noted that "a distinction has been drawn between the test of '. . . arising out of and in the course of the employment . . .' [citation] and the test of 'scope

of employment' under the *respondeat superior* doctrine." (*Id.* at p. 880.) The court noted that they were "governed by the mandate of liberal construction contained in [the workers' compensation statute]," and specifically stated it was not answering the question whether, under the third party doctrine of respondeat superior, an employer would be liable for injury to a third party caused by the negligence of its employee during a workers' compensation trip. (*Ibid.*)

■ Cases since *Laines* have declined to apply workers' compensation principles to respondeat superior issues. (See *Sunderland v. Lockheed Martin Aeronautical Systems Support Co.* (2005) 130 Cal.App.4th 1, 10–11 [29 Cal.Rptr.3d 665]; *Tognazzini, supra*, 86 Cal.App.4th at p. 1057; *Anderson, supra*, 14 Cal.App.4th at p. 259; *Blackman, supra*, 233 Cal.App.3d at p. 605; *Harris v. Oro-Dam Constructors* (1969) 269 Cal.App.2d 911, 915 [75 Cal.Rptr. 544].) The court in *Blackman* explained: "[W]orkers' compensation cases are not controlling with respect to exceptions to the going-and-coming rule in cases involving respondeat superior. [Citation.] Workers' compensation and respondeat superior law are driven in opposite directions based on differing policy considerations. Workers' compensation has been defined as a type of social insurance designed to protect employees from occupational hazards, while respondeat superior imputes liability to an employer based on an employee's fault because of the special relationship. [Citation.] Further, courts heed statutory admonitions for a liberal construction favoring coverage in workers' compensation cases which are not present in respondeat superior law. [Citation.]" (*Blackman, supra*, 233 Cal.App.3d at p. 605.)

■ "The concept of 'scope of employment' in tort is more restrictive than the phrase 'arising out of and in the course of employment,' used in workers' compensation. (*Perez v. Van Groningen & Sons, Inc.* [(1986)] 41 Cal.3d [962,] 967, fn. 2 [227 Cal.Rptr. 106, 719 P.2d 676] . . . .)" (*Tognazzini, supra*, 86 Cal.App.4th at p. 1057.) Thus, *Laines* is limited to workers' compensation cases. To find Gadbois within the scope of employment at the time of the accident, her conduct had to be typical of or created by her work as a cook such that the accident was a foreseeable risk of her employment. (*Tognazzini, supra*, 86 Cal.App.4th at p. 1057.) ASP did not require Gadbois to go to CVCC for workers' compensation treatment on May 28, 2008. It also did not require her to drive to the appointment. Driving was not one of Gadbois's regular duties as a cook. Gadbois injuring someone in an automobile accident was not a foreseeable risk of her job as a prison cook. Accordingly, we conclude that the State is not liable for any injuries Gadbois caused to Fields when she drove to work from her workers' compensation appointment.

## DISPOSITION

The judgment is affirmed.